COMMONWEALTH *vs.* WILLIAM J. ZEITLER, JR.

Berkshire.    March 9, 1979. — May 11, 1979.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

*Search and Seizure,* Consent. *Constitutional Law,* Confrontation of witnesses. *Evidence,* Hearsay. *Practice, Criminal,* Instructions to jury. *Rape. Unnatural and Lascivious Act.*

At a criminal trial, evidence that a State trooper who was acquainted with the defendant and his parents went to the defendant's home to arrest him on warrants charging assault and battery by means of a dangerous weapon and rape and, after informing him only of the assault and battery warrants and reading the defendant his Miranda rights, asked whether he owned any firearms and that the defendant's wife, at the defendant's request, got the guns and gave them to the trooper warranted a finding that the defendant freely and voluntarily surrendered the guns. [545-548]

At a criminal trial, the judge did not err in allowing a witness to testify to parts of a conversation between the defendant and a codefendant whose trial had been severed since the codefendant's statements were admissible on the basis that they gave meaning to the defendant's incriminating responses. [548-549]

Taken as a whole, a judge's instructions with respect to rape were proper even though at one point he erroneously read the definition of rape in G. L. c. 277, § 39, as it appeared before it was amended by St. 1974, c. 474, § 7. [549-550]

At the trial of a defendant charged with the commission of an unnatural and lascivious act under G. L. c. 272, § 35, the judge erred in instructing the jury to the effect that the fondling of the victim's breasts or the touching of her pelvic area could be an unnatural and lascivious act. [550]

This court reported to the Supreme Judicial Court a question as to whether a person sixteen or seventeen years of age may consent to an act classified as "unnatural and lascivious" under G. L. c. 272, §§ 35 and 35A. [551-552]

INDICTMENTS found and returned in the Superior Court on April 11, 1975.

The cases were tried before *Tisdale*, J.

*Stephen T. Smith* for the defendant.

*Daniel A. Ford*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from convictions based on nine indictments: five charging assault by means of a dangerous weapon (G. L. c. 265, § 15B); two charging carrying a firearm without authority to do so (G. L. c. 269, § 10[a]); one charging the commission of an unnatural and lascivious act (G. L. c. 272, § 35); and one charging rape (G. L. c. 265, § 22). He has argued four separate issues based on appropriate assignments of error. We affirm eight of the defendant's convictions and reverse the conviction based on indictment 13621 charging that he committed an unnatural and lascivious act. We summarize the evidence consistent with the jury's verdicts.

On the evening of February 8, 1975, the defendant met Edward J. Casson, Jr., Edward Nutbrown and Patrick Dowling at a drinking establishment in Pittsfield. The four subsequently left there and proceeded in the defendant's automobile to the house of one Liccardi. When they arrived at the house Dowling and Nutbrown left the automobile, while Casson remained in the vehicle with the defendant. Casson testified that the defendant threatened him with a gun while he was alone with him in the car. Dowling and Nutbrown returned to the vehicle from

the house shortly thereafter because no one answered the door. At this time the defendant used his gun to threaten Casson and Nutbrown. Nutbrown testified that he overheard a conversation between the defendant and Dowling in which Dowling suggested that Nutbrown and Casson be released unharmed, while the defendant insisted that they not be.

The foursome returned to the drinking establishment they had visited earlier, and Dowling and Nutbrown left the vehicle. Shortly thereafter Dowling returned to the automobile alone and proceeded with Casson and the defendant to a house in Pittsfield, where Dowling was dropped off.

The defendant and Casson proceeded to the home of Cecil Bascom. They arrived between 12:30 and 1:00 A.M. and found the apartment occupied by Bascom and his seventeen year old sister, Laura. While at the apartment, the defendant threatened Casson, Bascom and Laura with two guns. Laura testified that the defendant, armed with a gun, then guided her into the bedroom, touched her breasts and vagina, forced her to submit to cunnilingus and compelled her to have vaginal intercourse with him. Later that morning the defendant left the Bascom apartment and returned to his residence in Hinsdale, where he lived with his wife and parents. Further evidence will be discussed at appropriate points in the opinion.

1. The defendant claims error in the denial of his motion to suppress the two pistols allegedly employed by him during the course of the crimes charged. He argues that the pistols were obtained by Trooper Bell of the Massachusetts State police as the result of a warrantless search and seizure, the defendant's consent to which was not voluntary. The circumstances in which the Commonwealth obtained the pistols, as disclosed by testimony adduced at the hearing on the motion to suppress, were as follows.

Trooper Bell received a telephone call from the Pittsfield police on February 9, 1975, informing him that warrants were outstanding on complaints charging the defendant with assault and battery by means of a dangerous weapon and rape. Bell knew the defendant on a "personal and professional" basis and had previously been a guest at the home of the defendant's parents. He knew that the parents occupied the first floor of a house and that the defendant and his wife occupied the second floor. Bell proceeded to that house and went directly to the mother's apartment, having been informed that the defendant was visiting there. The defendant's mother admitted Bell. Bell saw the defendant and told him that he was there to arrest him on a warrant charging him with an assault and battery involving the use of guns. Bell read the defendant the Miranda rights and ascertained that he understood the warnings, although he did not seek or obtain an express waiver of those rights.

After again advising the defendant that the warrant was for assault and battery by means of a dangerous weapon, Bell asked the defendant whether he owned any firearms. The defendant admitted that he did and described two black powder pistols with which he had recently been practicing. The defendant's description of his pistols matched the description Bell had received from the Pittsfield police department of the firearms involved in the crimes. When Bell asked the defendant if he could see the guns and "take them with us," the defendant offered to go upstairs to get them. Bell did not allow the defendant, who was under arrest, to do so. Instead, the defendant's wife, at the defendant's request, got the guns and gave them to Bell, who then prepared to transport the defendant and the two guns to the Pittsfield police station. As they entered the cruiser, Bell advised the defendant that there was also an outstanding warrant charging him with rape. He had withheld the information about the rape charge while in the house because he was concerned that knowledge of such a charge at that

time would upset the defendant's mother and wife and precipitate an unnecessarily unpleasant situation. As they neared the police station Bell told the defendant that regulations required that he be handcuffed. He handed a pair of handcuffs to the defendant, who put them on himself.

The nub of the question before us regarding the judge's refusal to suppress this evidence is whether the defendant freely and voluntarily surrendered the pistols to Trooper Bell. *Commonwealth* v. *Mendes*, 361 Mass. 507, 512 [1972]. We need not determine whether Bell's acquisition of the guns from the defendant constituted a search (see *Coolidge* v. *New Hampshire*, 403 U.S. 443, 489-490 [1971]; *Commonwealth* v. *Aguiar*, 370 Mass. 490, 496 [1976], and cases cited) because the standard by which we test the voluntariness of the defendant's actions is the same, whether or not the action technically was a search. The voluntariness of the defendant's consent is a question of fact to be determined by the judge based on the circumstances of the case in their totality and not "on the presence or absence of a single controlling criterion." *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 226 (1973). See *Commonwealth* v. *Mendes*, 361 Mass. at 512-513; *Commonwealth* v. *Aguiar*, 370 Mass. at 496-497; *Commonwealth* v. *Walker*, 370 Mass. 548, 554-556, cert. denied, 429 U.S. 943 (1976); *United States* v. *Watson*, 423 U.S. 411, 424-425 (1976). The voluntariness of the defendant's consent here was indicated by his cooperative conduct (*Commonwealth* v. *Aguiar*, 370 Mass. at 496) and by the absence of trickery or threats on the part of the trooper (*Commonwealth* v. *Walker*, 370 Mass. at 555). Bell's failure immediately to inform the defendant of the rape warrant outstanding against him was not an omission that required a finding that the trooper employed direct or indirect coercion to obtain the pistols. Compare *Schneckloth* v. *Bustamonte*, 412 U.S. at 228; *United States* v. *Watson*, 423 U.S. at 424-425. Neither was the acquisition of the pistols made unreasonable, nor was the defendant's

consent tainted by the fact that he did not expressly waive his right to consult with counsel (see *North Carolina* v. *Butler*, 441 U.S. 369, 374-376 [1979]) even though that is a factor to be considered in any inquiry into the voluntariness of the consent.[1] The judge's finding that the defendant freely and voluntarily gave the pistols to Bell was warranted by the evidence recited above, and his refusal to suppress the pistols was justified.

2. The defendant contends that the judge erred when he allowed a witness to testify to parts of a conversation between the defendant and Dowling, a codefendant whose trial had been severed from that of the defendant. The defendant argues that the part of the conversation attributed to Dowling was hearsay and also violated the rule stated in *Bruton* v. *United States*, 391 U.S. 123 (1968). The only argument made to the judge as to the admissibility of this testimony was based on the *Bruton* rule, even though, as the defendant concedes in his brief, *Bruton* "is restricted in its holding to the introduction of a statement inculpating a defendant where the co-defendant at joint trial declines to take the stand and subject himself to cross-examination." We decline to extend the rationale of that rule to the present situation.

We note, without considering the timeliness of the objections made at trial, that the testimony objected to concerned a running conversation between Dowling and the defendant. Most of the conversation was attributed to the

---

[1] We note that the United States Supreme Court has expressly rejected the notion that only consent obtained after a knowing and intelligent waiver of one's Fourth Amendment rights would be sufficient to bypass the Fourth Amendment's warrant requirement. *Schneckloth* v. *Bustamonte*, 412 U.S. at 235-246. When the Court adopted the voluntariness standard for consent searches, they were aware that it was looser than the standard required for waivers of other constitutional rights. To impose a requirement that the right to counsel be knowingly and intelligently waived before consent sufficient to allow a warrantless search could be given would run contrary to the thrust of *Schneckloth*. But see *United States* v. *Praetorius*, 457 F. Supp. 329 (E.D.N.Y. 1978).

defendant, and in it, among other things, he threatened to kill two of the four people present. The statements attributed to Dowling were made in an attempt to dissuade the defendant from carrying out his threats. They gave meaning to the defendant's incriminating responses and were admissible on that basis. See *Commonwealth* v. *Kerrigan*, 349 Mass. 295, 301 (1965).

3. Early in the part of his charge on the subject of rape, the judge read the principal parts of G. L. c. 265, § 22, as appearing in St. 1974, c. 474, § 1, and that part of G. L. c. 277, § 39, as appearing in St. 1974, c. 474, § 7, which defines rape. After making some general observations on acts constituting rape, the judge returned to the definition in § 39 but read it as it appeared before it had been amended in 1974. "[B]ut to get back to this again: rape is the unlawful, forcible carnal knowledge by a man of a woman against her will and without her consent." He went on to say, "Well, the only lawful intercourse that can take place is between a husband and wife and there is no question that Laura Bascom was not the wife of the defendant." The defendant excepted to the latter statement. He argues that the judge "interjected into the jury deliberation process an issue which the jurors should not have been directed or permitted to consider . . . ."

The judge's use of the word "unlawful" and then his description of the circumstances in which intercourse may be lawful was unnecessary and better left unsaid.[2] However, the words were innocuous when the charge is considered as a whole. *Commonwealth* v. *Brunelle*, 361 Mass. 6, 12 (1972). *Commonwealth* v. *Ramey*, 368 Mass. 109, 114 (1975). It was made clear to the jurors in the portion of the charge following the language objected to that the issue that they had to decide was whether the victim had been compelled to submit to the defendant by

[2] This issue might well have been avoided had either counsel called the judge's attention to the fact that he had read § 39 as it appeared prior to being amended.

force and against her will. The closing words on that subject were, "So, that's the key to that matter, the act of intercourse having been admitted by both plaintiff and defendant, was it a voluntary act? Did Laura Bascom voluntarily enter into it, or did she submit because of force, or was she compelled by threats of bodily harm or bodily injury to herself? She is at an age where she could consent. So you've got to decide that issue, was there a rape or wasn't there a rape?"

4. Lastly, the defendant faults the judge's charge concerning the indictment for the commission of an unnatural and lascivious act under G. L. c. 272, § 35. We need look only to whether the jury were properly instructed as to evidence that would permit them to find that an unnatural act had taken place.

A. We are of the opinion that the judge erred in allowing to remain uncorrected certain language in his charge to which the defendant excepted. The charge as it was left with the jury was in the main a reading of parts of the language appearing in *Jaquith* v. *Commonwealth*, 331 Mass. 439, 442-443 (1954). This broad language would be inappropriate in a charge today. *Balthazar* v. *Superior Court*, 573 F.2d 698, 700-702 (1st Cir. 1978). The instructions given also left the jury free to find that the fondling of the victim's breasts or the touching of her pelvic area could be an unnatural and lascivious act. Both the Supreme Judicial Court and this court have judicially defined specific acts which constitute unnatural sexual intercourse. See *Commonwealth* v. *Gallant*, 373 Mass. 577, 584-587 (1977); *Commonwealth* v. *Mamay*, 5 Mass. App. Ct. 708, 709-710 (1977). Such acts are also proscribed by G. L. c. 272, § 35. See *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 4 (1972). None of those cases goes so far as to hold that the fondling and touching referred to in the charge here could be considered unnatural acts. To approve the charge as given, it would be necessary to extend the meaning of the language of § 35 to include such actions, and that we decline to do.

B. The judge instructed the jury with respect to indictment 13621, in which the defendant was charged with the commission of an unnatural and lacivious act, that "[the victim] was seventeen years of age. She was not an adult, so consent is not a defense." At the conclusion of the charge the defendant called the judge's attention to that language and took exception to it. Thus, there is posed the question whether a person sixteen or seventeen years of age is capable of giving consent to an unnatural and lascivious act such as cunnilingus which, if conducted in private, would not be criminal. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974).

It is clear that a person under the age of sixteen cannot give such consent (G. L. c. 272, § 35A) and that a person who was attained the age of eighteen can. G. L. c. 4, § 7, Forty-ninth, as appearing in St. 1973, c. 925, § 1. Despite our holding in *Commonwealth* v. *Fleurant*, 6 Mass. App. Ct. 846 (1978), and the use of the word "adult" by the Supreme Judicial Court in the *Balthazar* case, a majority of the panel are of the belief that there is a serious question as to whether it is the law that a person between sixteen and eighteen who can consent to any of the panoply of acts which constitute sexual intercourse (*Commonwealth* v. *Gallant*, 373 Mass. at 584-585 [1977]; *Commonwealth* v. *Mamay*, 5 Mass. App. Ct. at 709-710 [1977]) can also consent to those acts which have been or may be classified as "unnatural and lascivious" under G. L. c. 272, §§ 35 and 35A, so as to bar a prosecution under either of those sections. The Supreme Judicial Court was not faced with that question in *Balthazar*, as the victim in that case testified that she was twenty-one at the time of the alleged offense and was thus an "adult" by any standard.

A majority of the panel are of the opinion that the question whether a person sixteen or seventeen years of age may give consent to an unnatural or lascivious act within the meaning of the *Balthazar* case is of unusual legal significance and accordingly report that question to

the Supreme Judicial Court for its consideration and determination prior to any retrial of indictment 13621. G. L. c. 211A, § 12. See also G. L. c. 211A, § 10(B).

Because the charge allowed the jury to find the defendant guilty of violating § 35 by reason of acts which we have held are insufficient to support a conviction, the judgment under indictment 13621 charging an unnatural and lascivious act is reversed, and the verdict on that indictment is set aside. The judgments on the other indictments are affirmed.

*So ordered.*