## COMMONWEALTH vs. JAMES K. CHRETIEN.

Essex. December 2, 1980. — March 9, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Rape. Statute,* Construction, Retroactivity. *Husband and Wife,* Rape. *Jury and Jurors. Practice, Criminal,* Examination of jurors. *Evidence,* Relevancy and materiality, Sexual conduct. *Constitutional Law,* Confrontation of witnesses. *Due Process of Law,* Retroactive application of statute.

Statute 1974, c. 474, §§ 1, 7, which revised the definition of rape in G. L. c. 265, § 22, and c. 277, § 39, eliminated the common law exception which had precluded the prosecution of a husband who forcibly had sexual intercourse with his wife against her will. [127-132]

There was no unfairness in subjecting a defendant to criminal prosecution for rape of his wife under G. L. c. 265, § 22, as amended by St. 1974, c. 474, § 1, which this court construes to eliminate the common law spousal exclusion, where the rape occurred after the wife had obtained a judgment of divorce nisi and was therefore unlawful even under the common law. [132-133]

At the trial of a defendant charged with raping his wife, the judge did not abuse his discretion in declining to examine prospective jurors as to whether any of them were affiliated with organizations involved in issues of sexual equality. [134]

At the trial of a defendant charged with raping his wife, there was no error in admitting evidence that the victim was the plaintiff in a divorce action against her husband in which a judgment nisi had been obtained. [134-136]

At the trial of a defendant charged with raping his wife after she had obtained a divorce which had not become final, there was no error in excluding evidence that the victim was taking oral contraceptives at the time of the alleged rape. [136]

A defendant charged with raping his wife was not entitled to question the victim in the presence of the jury as to her sexual activities with men other than the defendant where the evidence presented at voir dire established that the proposed cross-examination was based on mere speculation. [136-138]

INDICTMENTS found and returned in the Superior Court Department on March 26, 1979.

The cases were tried before *Morse, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Joel R. Labell* (*Ralph A. Barbagallo, Jr.,* with him) for the defendant.

*Diane M. Kottmyer,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant was tried before a jury in the Superior Court and convicted of rape, and breaking and entering a dwelling house in the nighttime with intent to commit a felony and assaulting a person lawfully therein. He was sentenced to from three to five years incarceration at the Massachusetts Correctional Institution at Walpole and to three years probation on and after release. He appealed to the Appeals Court, and we transferred the appeal here on our own motion.

The defendant contends that the trial judge erroneously ruled that the fact that the victim was the defendant's wife was no defense to a charge of rape under G. L. c. 265, § 22, as amended by St. 1974, c. 474, § 1. Further, he claims that it was erroneous for the judge (1) to decline to examine prospective jurors as to whether they were affiliated with organizations involved in issues of sexual equality, (2) to admit evidence that the victim was the plaintiff in a divorce action between the victim and the defendant in which a judgment nisi was obtained, (3) to exclude evidence that the victim was taking oral contraceptives at the time of the alleged rape, and (4) to refuse to permit defense counsel to inquire of the victim in the presence of the jury as to prior sexual conduct.

We find no error and therefore affirm the convictions. We conclude that, under the statutes in effect at the time of the alleged offenses, the fact that the victim was the spouse of the defendant was no bar to a conviction of rape. The defendant further argues that the statutes were so unclear

on the issue of spousal exclusion that our construction should be applied prospectively only. On this issue, we conclude that the defendant had fair warning of the criminality of his conduct in that, under the common law, a man could be convicted of rape of his wife where, as in this case, a judgment nisi of divorce had been entered before the act of forced intercourse.

There was evidence from which the jury could have concluded the following. The defendant and his wife (the victim) were married on October 13, 1968. On May 4, 1978, the victim separated from the defendant and thereafter instituted divorce proceedings. A judgment nisi was granted to the victim on October 10, 1978. Under G. L. c. 208, § 21, the judgment was to become final on April 10, 1979. The victim did not reside with the defendant at any time after May 5, 1978.

The victim on various nights received frequent telephone calls from the defendant between 2 and 3 A.M. Several days prior to the alleged rape, he called her and stated that he had earlier driven to her house because "he had intentions for breaking into [her] house, and he had controlled himself." He then drove by her house to demonstrate that he was "serious." During the evening of February 7, 1979, the victim was home alone with her two children. She put them to bed at approximately 9 P.M. and thereafter went to bed after locking the doors to her apartment. She was awakened by a telephone call from the defendant at approximately 2 A.M. on February 8; after a brief conversation, she went back to sleep. She was awakened at approximately 3:15 A.M. by the defendant's banging at the back door. She ran down the front stairs to the second floor landing in order to seek help from the neighbors who lived on that floor. The defendant, having gained entrance to her apartment by breaking the locks on the kitchen door, followed her down the stairs. A struggle ensued following which the defendant pulled her upstairs by the neck after the wooden banister she was holding onto broke.

The neighbors, in response to the victim's screams, called the police, who arrived and were admitted by a neighbor and the couple's nine-year old child. The officers observed that the victim was crying, shaking and upset, and had red finger marks on the back of her neck. The police officers ascertained that the defendant lived elsewhere, removed him from the apartment, and watched him drive off.

The defendant telephoned shortly thereafter and the victim hung up on him. She then telephoned a friend. In the course of this telephone conversation she looked up and saw the defendant in her bedroom doorway. She screamed words to the effect, "My God, he's back. Call the police." Her friend then called the police. The victim attempted to escape but was trapped by the defendant at the doorway. He told the victim to "be quiet or he'd kill [her]" and told her to remove her clothes. He then pushed her on the bed and forced her to have sexual intercourse with him. She stated at trial that she did not resist because she was afraid that he would hurt her and because she did not want the children to come in and see what was happening.

Immediately following this the defendant, apparently observing the lights of a police cruiser, stated "hide me" and ran into the children's room. The police officer found the defendant hiding in the upper bunk in the children's room and placed him in protective custody. They searched for his truck and subsequently found it parked behind a gasoline station some distance away and hidden from view of the street.

That morning, several hours after the incident, the victim telephoned her sister and stated that the defendant had broken into her apartment and forced her to have sexual intercourse with him. The same morning the victim went to a hospital emergency room; a doctor observed multiple contusions and abrasions to her body. Other people observed bruises on her face, neck and arm. A neighbor noticed the broken locks on her kitchen door as well as the broken banister. Subsequent analysis of vaginal samples collected from the victim that morning revealed the presence of semen and

sperm. The next day, February 9, 1979, the victim went to the Haverhill District Court and obtained criminal complaints against the defendant.

1. *The Indictment for Rape.*

At common law, rape was defined as "the carnal knowledge of a woman forcibly and against her will." 4 W. Blackstone, Commentaries 210 (1778). The earliest statutory prohibition of rape in the laws of the Commonwealth appeared in 1649: "If any man shall ravish any maid, or single woman, committing carnal copulation with her by force, against her own will . . . he shall be punished either with death or with some other grievous punishment according to circumstances . . . ." The Charters and General Laws of the Colony and Province of Massachusetts Bay, c. 18, § 15 (1814). The language of this early statute appears to include a reflection of the common law principle that a man cannot, as a matter of law, rape his wife. "[T]he husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent an [*sic*] contract the wife hath given up herself in this kind unto her husband, which she cannot retract. . . . [I]n marriage she hath given up her body to her husband . . . ." 1 Hale, Pleas of the Crown 628 (1800).[1] In addition to this contractual analysis, the spousal

---

[1] Hale's statement of the principle was subsequently criticized by several Justices. In *Queen* v. *Clarence,* 22 Q.B.D. 23, 57 (1888), quoted in *Regina* v. *Miller,* [1954] 2 Q.B. 282, 288, Justice Field (dissenting) stated: "The authority of Hale, C.J., on such a matter is undoubtedly as high as any can be, but no other authority is cited by him for this proposition, and I should hesitate before I adopted it. There may, I think, be many cases in which a wife may lawfully refuse intercourse, and in which, if the husband imposed it by violence, he might be held guilty of a crime." Accord, *Queen* v. *Clarence, supra* at 33 (Wills, J.) and 37 (Smith, J.). The principle itself has been harshly criticized. See J.S. Mill, The Subjection of Women, in Three Essays by John Stuart Mill 427 (1912). More recently, the principle was challenged in New Jersey in *State* v. *Smith,* 148 N.J. Super. 219, 227 (1977), rev'd on other grounds, 85 N.J. 193 (1981): "Hale's rationale, in our judgment, if acceptable in a 17th Century setting, simply has lost touch with the reality of the 20th Century. Such reasoning overlooks the basic nature of the rape interdiction created by a

exclusion is sometimes seen as a derivation of the ancient definition of rape as "unlawful" carnal knowledge of a woman by a man without her consent: intercourse between husband and wife is not unlawful; therefore, it is reasoned, neither spouse may be prosecuted for what would otherwise be rape. R. Perkins, Criminal Law 156 & n.40 (2d ed. 1969). The irrevocable consent concept as explained by Hale and the concept of rape as limited to "unlawful" carnal knowledge have both been criticized. "Neither of these rationalizations is entirely satisfactory. The former is essentially fictive, for there is no reason why agreement to enter a relation of intimacy necessarily means consent to intercourse on demand. The latter explanation simply begs the question." Model Penal Code § 213.1, at 343, Comment (1980). It is generally thought, though, that the basis of the spousal exclusion probably lies in the ancient concept of the wife as a chattel. *Id.* See *State* v. *Smith,* 85 N.J. 193 (1981); Note, The Marital Rape Exemption, 52 N.Y.U.L. Rev. 306, 307 (1977). See also Barry, Spousal Rape: The Uncommon Law, 66 A.B.A.J. 1088 (Sept. 1980); Cavanagh, "A Little Dearer than his Horse": Legal Stereotypes and the Feminine Personality, 6 Harv. C.R.-C.L.L. Rev. 260 (1971).

We have never been directly presented with the question whether any rape statute preceding that enacted in 1974 encompassed the common law exception precluding the prosecution for rape of a husband who forcibly had sexual intercourse with his wife against her will. In dictum in an early case,[2] we suggested that this common law rule was in effect

---

civilized society." See also Note, The Marital Rape Exemption: Legal Sanction of Spouse Abuse, 18 J. Fam. L. 565 (1979-1980).

[2] *Commonwealth* v. *Fogerty,* 8 Gray 489 (1857). The proposed Massachusetts Criminal Code, citing *Fogerty,* assumed in 1972 that the common law spousal exclusion was established law in Massachusetts under the statute then applicable. Section 16 of the proposed code made "explicit the common law rule that a husband could not commit rape by having sexual intercourse with his wife because such intercourse was not 'unlaw-

in Massachusetts. In 1974, however, G. L. c. 265, § 22 (defining and punishing rape), and G. L. c. 277, § 39 (defining the word "rape" as used in an indictment), were completely revised by St. 1974, c. 474, §§ 1, 7. Prior to the 1974 amendments, G. L. c. 265, § 22,[3] and G. L. c. 277, § 39,[4] utilized the common law terms to define rape. For the purposes of this case, we proceed on the assumption that, since both statutes used common law language, they maintained the spousal exclusion feature of the common law.[5] The Commonwealth points to the pre-1974 version of G. L. c. 277, § 39, as specifically incorporating the common law spousal exclusion by its use of the word "unlawful."

As we noted above, the offense of rape was substantially redefined in 1974. The General Court, in legislation we have stated "must be viewed as part of a comprehensive attempt to redefine the legal elements of rape," *Commonwealth* v. *Gallant*, 373 Mass. 577, 583 (1977), abandoned the common law terminology which had been used to define rape in the Commonwealth for over 300 years. In St. 1974,

---

ful'. See Perkins on Criminal Law 156 (2d ed. 1969). This is the present law in Massachusetts. See *Commonwealth* v. *Fogerty*, 74 Mass. (8 Gray) 489 (1857)." Proposed Criminal Code of Massachusetts, Revision Commission Note to c. 265, § 16 (1972).

[3] The former version of G. L. (Ter. Ed.) c. 265, § 22 (1932), provided that "[w]hoever ravishes and carnally knows a female by force and against her will shall be punished by imprisonment in the state prison for life or for any term of years."

[4] The former version of G. L. (Ter. Ed.) c. 277, § 39 (1932), defined rape as "[t]he unlawful forcible carnal knowledge by a man of a woman against her will or without her consent; or the carnal knowledge by a man of a female child under the statutory age of consent." This is essentially the common law definition of the offense. 4 W. Blackstone, Commentaries 210 (1778). See also *Commonwealth* v. *Roosnell*, 143 Mass. 32, 38 (1886).

[5] To assume otherwise would terminate our discussion by resolving the question against the defendant. If the pre-1974 versions of G. L. c. 265, § 22, and G. L. c. 277, § 39, did not incorporate the common law spousal exclusion, then it is clear that the 1974 amendments would not insert the spousal exclusion and could not retain it.

c. 474, § 7, the Legislature defined rape as "[s]exual inter-
course or unnatural sexual intercourse by a person with
another person who is compelled to submit by force and
against his will or by threat of bodily injury, or sexual inter-
course or unnatural sexual intercourse with a child under
sixteen years of age."[6] This amendment worked significant
changes in the rape law of the Commonwealth, at least one
change being at variance from the common law. In *Com-
monwealth* v. *Gallant, supra* at 584-585, we held that the
replacement of the archaic terminology of "ravishing" and
"carnal knowledge" with the more contemporary "sexual
intercourse" and "unnatural sexual intercourse" necessarily
reworked the common law definition of rape by disregard-
ing the sex of the offender and the victim. We think that
the modernization of the language of G. L. c. 265, § 22,
and the omission of the word "unlawful" from the revised
G. L. c. 277, § 39, worked further changes upon the law of
rape by abandoning the common law spousal exclusion.

It is widely recognized that the use of the word "unlaw-
ful" in rape statutes signifies the incorporation of the com-
mon law spousal exclusion. "The word 'unlawful' is used
with different meanings. In this connection [with rape] it is
used in the sense of 'not authorized by law.' Sexual inter-
course between husband and wife is sanctioned by law
. . . ." R. Perkins, Criminal Law 156 (2d ed. 1969). See 1
R.A. Anderson, Wharton's Criminal Law and Procedure
§ 305 (1957). The use of this particular word in rape stat-
utes has been criticized as devoid of substantive meaning,

---

[6] Statute 1974, c. 474, § 1, rewrote G. L. c. 265, § 22, to read "[w]ho-
ever has sexual intercourse or unnatural sexual intercourse with a person,
and compels such person to submit by force and against his will, or com-
pels such person to submit by threat of bodily injury, shall be punished by
imprisonment in the state prison for life or for any term of years."

The usual means of incorporating the spousal exclusion into modern
rape statutes is to insert the words "not his spouse" immediately following
the words "a person" or "another person." See, e.g., Model Penal Code
§ 213.1 (1980); Proposed Criminal Code of Massachusetts c. 265, § 16
(1972). This was not done in either G. L. c. 265, § 22, or G. L. c. 277,
§ 39.

since the reach of the statutory proscription is what renders the intercourse unlawful. *State* v. *Smith,* 148 N.J. Super. 219, 230 (1977), rev'd on other grounds, 85 N.J. 193 (1981). Nevertheless, the word "unlawful" was commonly thought to signify the incorporation of the spousal exclusion in G. L. c. 277, § 39. Cf. *Commonwealth* v. *Zeitler,* 7 Mass. App. Ct. 543, 549 (1979).

The significance of the omission of "unlawful" from G. L. c. 277, § 39, by the 1974 amendment was noted by at least one commentator. J.R. Nolan, Criminal Law § 222, at 103 (1976). The Legislature subsequently altered G. L. c. 277, § 39, by St. 1978, c. 379, §§ 8, 9, but left the definition of rape untouched. Following a spousal rape prosecution in Oregon in 1978 which received prominent news media coverage, and after Chretien's widely reported conviction in 1979, the Legislature rewrote G. L. c. 265, § 22, by St. 1980, c. 459, § 6, but did not exclude spousal rape.

We recognize that we here construe the rape statutes in a fashion contrary to the common law. We think, however, that while "a statute in derogation of the common law is to be strictly construed, the construction adopted should advance rather than defeat the purpose of the statute." *Hayon* v. *Coca Cola Bottling Co.,* 375 Mass. 644, 648-649 (1978). It is true that we have found no legislative history to aid us in our determination of the legislative purpose, and the rape statutes themselves contain no statement of legislative intent or policy concerning the spousal exclusion. Nevertheless, we have found in a similar statute an indication of a legislative purpose which is of some assistance.

In St. 1978, c. 447, the Legislature enacted the "Domestic Violence Act," presently codified in G. L. c. 209A. This act provides a wide range of remedies for "abuse" and expressly defines "abuse" to cover involuntary sexual relations engaged in by spouses when one spouse is made to submit by force, threat of force or duress. General Laws c. 209A, § 3, provides a wide range of civil sanctions for the proscribed conduct and expressly states that proceedings under c. 209A shall not preclude any other available civil or crimi-

nal remedies. We think that G. L. c. 209A provides us with a clear legislative statement of public policy which we should try to advance in our construction of G. L. c. 277, § 39. This statement, together with the omission of "unlawful" from G. L. c. 277, § 39, reflects the intent of the Legislature to criminalize such conduct. These factors support our conclusion that the 1974 revision of G. L. c. 265, § 22, and G. L. c. 277, § 39, eliminated the common law spousal exclusion.[7]

The defendant also submits that the uncertainty which has heretofore existed concerning the spousal exclusion precludes our application of these new principles to him. He claims that because of the prior unsettled state of the law it would be fundamentally unfair to subject him to criminal prosecution for activity which was not clearly defined as criminal. If it were not for the prior interlocutory judgment granting a divorce nisi, these arguments might not be without merit.

In some earlier cases we refused to apply, other than prospectively, a rule establishing criminal responsibility for activity which previously had not been clearly prohibited. We have not hesitated to relieve defendants of criminal responsibility where the law was so unsettled or unclear that it did not provide fair notice of what conduct was forbidden. See, e.g., *Commonwealth* v. *Klein*, 372 Mass. 823, 832-834 (1977). Were it not for the unique facts of this case, it is arguable that the present statutory scheme is sufficiently unclear, absent judicial construction, *as to render its* application in spousal rape cases fundamentally unfair.

---

[7] The Commonwealth suggests that if G. L. c. 265, § 22, were construed to preserve marriage as a defense to the crime of rape, and if a judicial order of separation or judgment of divorce nisi did not operate to revoke the implied consent to intercourse under the common law rule, the constitutionality of § 22 would be subject to challenge on both due process and equal protection grounds. See Clancy, Equal Protection Considerations of the Spousal Sexual Assault Exclusion, 16 New England L. Rev. 1 (1980). Since we construe the statute otherwise, we need not reach these constitutional questions.

The defendant's position is without merit, however, because he had sufficient warning that his conduct was unlawful. Even under the common law rule urged upon us by the defendant, forcible, nonconsensual sexual intercourse between spouses following the entry of a divorce judgment nisi was unlawful. In *Regina* v. *O'Brien,* [1974] 3 All E.R. 663, a wife had petitioned for divorce and was granted a decree nisi. Following this, the husband was charged with having raped her. The husband moved to quash the indictment asserting that the offense of rape could not be committed by the husband on his wife until a decree absolute was pronounced. The court rejected this argument and denied the motion, holding: "There can be no question that by a decree nisi a wife's implied consent to marital intercourse is revoked. Accordingly, a husband commits the offence of rape if he has sexual intercourse with her thereafter without her consent." *Id.* at 665. *State* v. *Smith,* 85 N.J. 193 (1981). Accord, *Regina* v. *Steele,* 65 Crim. App. 22, 25 (1976). These cases make the limits of the common law spousal exclusion sufficiently clear and, together with the divorce judgment nisi, provide fair warning that the defendant's conduct was prohibited. We do not think it unfair to apply the rape statutes to him. The ruling of the judge below denying the defendant's motion to dismiss the indictment charging him with rape was correct.

2. *The Contested Rulings.*

The defendant claims that several rulings were erroneous. Specifically, he contends that it was erroneous for the judge (a) to decline to examine prospective jurors as to whether any of them were affiliated with organizations involved in issues of sexual equality, (b) to admit evidence that the victim was the plaintiff in the divorce action in which the judgment nisi was obtained, (c) to exclude evidence that the victim was taking oral contraceptives at the time of the alleged rape, and (d) to refuse to permit defense counsel to inquire of the victim in the presence of the jury as to her prior sexual conduct. We examine each of these contentions below.

a.  Prior to empanelling, the defendant filed a motion for specific examination of jurors wherein he requested that the judge inquire whether any prospective juror was affiliated with any organization involved in issues of sexual equality. The judge declined to ask the question during his initial examination of the entire panel, but indicated that he might use the question if an individual juror's response gave rise to a doubt as to his impartiality.  No such situation arose although the judge carefully and directly inquired of the panel whether the fact that the defendant was married to the victim of the alleged rape would affect any juror's ability to decide the case fairly and impartially on the basis of the evidence.

Subject to statutory provisions (see G. L. c. 234, § 28) and the constitutional requirements enunciated in *Ham* v. *South Carolina*, 409 U.S. 524 (1973), the nature and extent of examination of prospective jurors lies within the sound discretion of the trial judge.  *Commonwealth* v. *Harrison*, 368 Mass. 366, 371 (1975).  *Commonwealth* v. *Lumley*, 367 Mass. 213, 216 (1975).  *Commonwealth* v. *Ryles*, 363 Mass. 674, 676-677, cert. denied, 414 U.S. 980 (1973).  *Commonwealth* v. *Nassar*, 354 Mass. 249, 253 (1968), cert. denied, 393 U.S. 1039 (1969).  The defendant has not explained how a juror's affiliation with an organization advocating sexual equality might give rise to bias, once it was established that a husband could be prosecuted for the rape of his wife.  In these circumstances, the judge's failure to pose the question as to prospective jurors' affiliation with organizations involved in issues of sexual equality did not deprive the defendant of his rights under G. L. c. 234, § 28, or his constitutional right to an impartial jury.

b.  The admission of evidence establishing that the victim was the plaintiff in the divorce action in which the judgment nisi was obtained was also correct.  The victim testified on direct examination and over the defendant's objection that she initiated divorce proceedings against the defendant after she separated from him in May, 1978.  The defendant claims that the admission of this testimony con-

stituted error because it was not relevant to any issue presented in the case. He argues that the error was prejudicial because he was presented to the jury as an individual who was "guilty" of some wrongdoing in an unrelated matter.

The relevancy of proffered evidence depends on whether it tends to prove some issue in the case on trial. *Commonwealth* v. *Durkin*, 257 Mass. 426, 427-428 (1926). *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 3 (1972). See McCormick, Evidence § 185, at 435 (2d ed. 1972); Proposed Mass. R. Evid. 401 (July, 1980). Under an indictment charging rape, the prosecution has an affirmative duty to prove beyond a reasonable doubt that sexual intercourse was performed against the will of the victim and without consent. G. L. c. 265, § 22. *Commonwealth* v. *McKay*, 363 Mass. 220, 224-225 (1973). *Commonwealth* v. *Deschamps, supra.* Consent is therefore an issue in every rape prosecution for intercourse to which the victim could have legally consented, even where, as here, the defendant denies that intercourse involving him has taken place.

The circumstances under which the marriage terminated were directly relevant to the question of consent. Cf. G. L. c. 233, § 21B, which recognizes the relevancy of a prior sexual relationship between a victim and a defendant by creating an exception to its exclusionary rule. Evidence that the victim was the plaintiff in the divorce action is also relevant here because it tended to show a possible basis for the existence of hostility toward the victim on the part of the defendant, as well as tending to show that the victim intended the marital relationship to be terminated and was unlikely to consent to subsequent sexual intercourse. "[R]elevant evidence should be admitted unless there is a quite satisfactory reason for excluding it." *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). Where it is argued that the probative value of evidence is outweighed by its prejudicial impact, the question of admissibility is to be determined by the judge. *Id.* at 59-60.[8] The judge did not abuse his discretion by holding

---

[8] Even evidence which tends to establish unrelated criminal activity on the part of a defendant is admissible where it is otherwise relevant and its

that the prejudice alleged by the defendant did not outweigh the probative value of the evidence and that exclusion was not required.

c. The defendant contends that the judge improperly excluded evidence that the victim was taking birth control pills. At trial the defendant asserted that such evidence would show the victim's "state of mind" with respect to the defendant. The defendant argues that the rape-shield statute, G. L. c. 233, § 21B, was improperly invoked to exclude this evidence. However, the defendant must first demonstrate that the excluded evidence was relevant by showing that it had a "rational tendency to prove an issue in the case." *Commonwealth* v. *LaCorte*, 373 Mass. 700, 702 (1977). The evidence does not meet even this threshold test of relevancy and was therefore properly excluded. See *United States* v. *Kasto*, 584 F.2d 268, 272 (8th Cir. 1978); *State* v. *Herrera*, 92 N.M. 7, 16 (1978).

d. Finally, the defendant argues that the judge's interpretation of the rape-shield statute operated to restrict unduly his cross-examination of the victim regarding recent sexual intercourse with men other than her husband. Medical tests subsequent to the victim's complaint established the presence of semen and sperm in the victim's vagina. The defendant sought to question the victim in the presence of the jury, alleging that such questioning would "explain that this sperm may well have come from a source other than the accused."

Although the defendant failed to comply with the procedural requirements of G. L. c. 233, § 21B,[9] the judge afforded him an opportunity, not in the presence of the jury, to ask the victim questions regarding sexual activities with

---

probative value outweighs potential prejudice. *Commonwealth* v. *Chalifoux*, 362 Mass. 811 (1973). *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 2-3 (1972). See Proposed Mass. R. Evid. 404(b) (July, 1980).

[9] The defendant did not submit a written motion for admission of evidence regarding prior sexual conduct with males other than the defendant.

men other than the defendant.[10]  In response to these questions the victim insisted that she had not been visited by any man at her apartment during the three days preceding the incident, nor had she had any social contact with any man at any place other than her apartment.  The judge, over the Commonwealth's objection, asked the victim, "Did you have sexual intercourse with anybody within seven days prior to February 8th, the day of this alleged offense?"  The victim answered she had not.  Following these questions the judge excluded the evidence.

The defendant's contention that the exclusion of this evidence violates his constitutional right to confront the victim deserves serious consideration.  Adding weight to this argument is the fact that the rape-shield statute itself, in its exception allowing the admission of "evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim," indicates the significance of this type of evidence and the importance of allowing the defendant to offer alternative explanations

---

[10] DEFENSE COUNSEL:  "Mrs. Chretien, did any friend of yours, any male person, visit you at your apartment on February 8th?"

THE WITNESS:  "No."

DEFENSE COUNSEL:  "Did any male visit you at your apartment on February 7th?"

THE WITNESS:  "No."

DEFENSE COUNSEL:  "To your best knowledge, did any male person visit you at your apartment on February 6th?"

THE WITNESS:  "No."

DEFENSE COUNSEL:  "Did you have occasion to be in the companionship of a male person anywhere other than your apartment on February 8th?"

THE WITNESS:  "If you mean a boyfriend type thing, no.  I might have seen men in the streets or wherever I was going."

DEFENSE COUNSEL:  "Did you have any social contact with any male person on February 7th, any place other than your apartment?"

THE WITNESS:  "No."

DEFENSE COUNSEL:  "Did you have any social contact with any male, other than in your apartment, on February 6th?"

THE WITNESS:  "No."

of its source. Nevertheless, the defendant has misperceived the preliminary showing which must be made before he is either constitutionally or statutorily entitled to cross-examine the victim before the jury as to the disputed evidence. The defendant must show at least that the theory under which he proceeds is based on more than vague hope or mere speculation. Certainly the constitutional right to confront one's accuser does not extend so far as to entitle the defendant to engage in an unbounded and free-wheeling cross-examination in which the jury are invited to indulge in conjecture and supposition. Neither does the rape-shield statute provide an opportunity for such cross-examination, although it does prescribe a voir dire in which the defendant may test his theory out of the jury's presence. After complying with the statutory prerequisites, he is entitled to this voir dire. On the basis of the evidence presented at voir dire in this case, he was entitled to no more.

3. The defendant's appeal as to the second indictment, for breaking and entering a dwelling house in the nighttime with intent to commit a felony and assaulting a person lawfully therein, presents no separate issue and thus fails as a result of our conclusion that there was no error as to the rape indictment.

*Judgments affirmed.*