COMMONWEALTH vs. CHARLES W. COLLINS, JR.

Worcester. February 17, 1981. — March 18, 1981.

Present: GREANEY, ROSE, & DREBEN, JJ.

*Firearms. Motor Vehicle,* Firearms. *Search and Seizure,* Consent. *Practice, Criminal,* Argument by prosecutor.

At the trial of a defendant charged with knowingly carrying firearms in a vehicle in violation of G. L. c. 269, § 10(*a*), evidence that the firearms were found in the trunk of the defendant's automobile after he was stopped for a traffic violation, that he had in his pants pockets ammunition which fit two of the guns, and that he had assisted in packing the trunk warranted a finding beyond a reasonable doubt that the defendant had knowledge of, and the requisite control over, the firearms. [584-586]

At a criminal trial, evidence that a State trooper, on stopping the defendant's automobile for a traffic violation, had noticed a metal object protruding from the defendant's pocket and had asked the defendant what it was and that the defendant had removed the object, a metal case containing marihuana cigarettes, opened it and displayed it to the trooper warranted a finding that the defendant had voluntarily surrendered the case. [586-588]

INDICTMENTS found and returned in the Superior Court Department on November 9, 1979.

The cases were tried before *McCooey,* J., a District Court judge sitting under statutory authority.

*Joseph F. Brennan, Jr.,* for the defendant.

*William E. Loughlin,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. Collins was convicted by a Superior Court jury on two indictments charging him with knowingly carrying firearms in a vehicle in violation of G. L. c. 269, § 10(*a*), and sentenced to concurrent terms in a house of

correction. His appeal from these convictions[1] raises questions with respect to: (1) the denial of his motion for a required finding of not guilty on the two charges (Mass.R.Crim.P. 25[a], 378 Mass. 896 [1979]); (2) the denial of his motion to suppress the firearms; (3) the propriety of the prosecutor's closing argument; and (4) the denial of his motion for a new trial. (Mass.R.Crim.P. 30[b], 378 Mass. 900 [1979]).

1. To obtain convictions on the § 10(a) indictments, the Commonwealth was required to show that Collins had personal knowledge of, and control over, the firearms found in his car. "It is not enough to place the defendant and the weapon in the same car" (*Commonwealth* v. *Boone*, 356 Mass. 85, 87 [1969]) because "[p]resence·alone cannot show the requisite knowledge, power, or intention to exercise control over the firearm . . . ." *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977). See *Commonwealth* v. *Bennefield*, 373 Mass. 452, 453 (1977); *Commonwealth* v. *Almeida*, 381 Mass. 420, 422 (1980); *Commonwealth* v. *Gray*, 5 Mass. App. Ct. 296, 298-299 (1977). However, "presence supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.'" *Commonwealth* v. *Albano*, *supra* at 134, quoting from *United States* v. *Brimley*, 529 F.2d 103, 108 (6th Cir. 1976). Collins argues that the Commonwealth's evidence was insufficient to warrant a finding that he knew of two loaded pistols inside a sleeping bag in the trunk of his car.

There was evidence that about 3:30 P.M. on September 19, 1979, Massachusetts State Trooper Thomas B. Duffy observed a red Cadillac with Maine license plates traveling west on Route 290 in Worcester. The car was straddling the

---

[1] The defendant's convictions on two other indictments charging unlawful possession of a controlled substance (marihuana) and of ammunition were placed on file with his consent and are not before us. *Commonwealth* v. *Subilosky*, 352 Mass. 153, 165 (1967). *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). *Commonwealth* v. *Thompson*, 382 Mass. 379, 381-382 (1981).

dividing line between two lanes and restricting movement in both lanes. After some difficulty Duffy stopped the car, intending to cite the driver for failing to stay within a marked lane (G. L. c. 89, § 4A). The car was owned and driven by Collins and contained three other passengers.

Upon approaching the vehicle, the trooper observed that Collins was carrying a sheathed knife and wearing a brass-studded leather wristband. Duffy asked Collins to step out of the car so that he could examine the knife. After examining the knife, Duffy asked Collins about a pair of handcuffs attached to his belt. Collins removed the handcuffs and gave them to Duffy, who examined them for serial numbers.

Duffy then noticed a metal object protruding about one inch from Collins' vest pocket, and asked — "what's that?" Duffy testified that Collins removed the object from his pocket, opened it and displayed it to him. Duffy observed it to be a metal case containing eight marihuana cigarettes. Collins was immediately arrested for possession of marihuana and advised of his rights. During a pat-down after the arrest, Duffy found thirteen rounds of 9 mm. Smith and Wesson ammunition and thirteen rounds of .32 caliber ammunition in Collins' pants pockets. Collins, in response to Duffy's inquiry, stated that he had "no authority" (see G. L. c. 269, § 10[h]) to possess the ammunition and that he was carrying it to a friend in Rochester, New York.

Duffy then informed Collins of his belief that weapons were hidden in the car. He asked Collins for permission to search the trunk and advised him that he could refuse a search. Collins responded that he did not have a key for the trunk. About that time, one of the passengers told Duffy that he had put his jacket into the trunk a short time before. A pat-down of the other passengers led to the discovery of quantities of Class B and Class E controlled substances, more marihuana, and six or seven additional rounds of .32 caliber ammunition.

The car was impounded and towed to a local garage. After a search warrant was obtained for the vehicle, its trunk

was forcibly opened and its contents searched. Inside a blue sleeping bag were found two pistols — a 9 mm. Smith and Wesson model 39 semi-automatic and a .32 caliber Colt 1903 semi-automatic. Both weapons were loaded. Inside a brown canvas duffel-bag was found another sleeping bag which contained an unloaded nickel-plated 9 mm. Smith and Wesson model 69 semi-automatic pistol. Duffy also testified that, while the case was under investigation, Collins admitted to him that he had assisted in loading the car's trunk.

The above recounted evidence, viewed as it must be in a light most favorable to the Commonwealth (*Commonwealth* v. *Albano, supra* at 135), required denial of the defendant's motion for a required finding of not guilty and submission of the case to the jury. Under relevant standards (see *Commonwealth* v. *Clark*, 378 Mass. 392, 402-403 [1979]; *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 [1979]), the circumstances taken as a whole (see *Commonwealth* v. *Kelley*, 359 Mass. 77, 86 [1971]), especially the defendant's ownership and operation of the car, his possession of ammunition which fit two of the guns, his evasive statements regarding access to the trunk, and his admission that he had assisted in packing the trunk, were sufficient to warrant a rational jury in concluding beyond a reasonable doubt that the defendant had knowledge of, and the requisite control over, the loaded firearms. See *Commonwealth* v. *Guerro*, 357 Mass. 741, 752 (1970); *Commonwealth* v. *Gizicki*, 358 Mass. 291, 297 (1970); *Commonwealth* v. *Albano, supra* at 135-136; *Commonwealth* v. *Gray, supra* at 298; *Commonwealth* v. *Crosby*, 6 Mass. App. Ct. 975 (1979). *Commonwealth* v. *Johnson*, 7 Mass. App. Ct. 191, 193-194 (1979).

2. Collins sought suppression of the ammunition and pistols as the fruits of an illegal search and seizure. He concedes that the trooper had the right to stop the car, to look at his license and registration, and to have him step out of the car for the purpose of examining the knife. He maintains that once these items were found to be in order, Duffy

should have issued a traffic citation and let him go without further inquiry. The evidence at the pretrial hearing was substantially the same as the evidence at trial, with the following additions. Duffy testified that he was not afraid of Collins when he asked about the metal object, that he did not intend to search Collins, and that he had no desire to see or examine the object. He testified that his only purpose in asking about the object was to have it identified, and that, in response to the inquiry, Collins took the case from his vest pocket, opened it and handed it over. It is not seriously disputed that, if the metal case properly came into the trooper's possession, the seizure of its contents would have been justified, the arrest legal, and the discovery of the ammunition in the defendant's pockets lawful as incident to a valid arrest. It is also not disputed that these circumstances constituted probable cause to obtain a search warrant for the trunk of the vehicle and its contents. The judge made extensive findings of fact on the entire episode in which he accepted the trooper's version of the events as credible. The judge ruled that Collins voluntarily displayed the metal case in hopes of avoiding discovery of the ammunition on his person and the weapons in the trunk.

The determinative question is whether Collins freely and voluntarily surrendered the case to Trooper Duffy. We need not decide whether acquisition of the metal case constituted a search (see *Coolidge* v. *New Hampshire*, 403 U.S. 443, 489-490 [1971]; *Grillo* v. *United States*, 336 F.2d 211, 213 [1st Cir. 1964], cert. denied sub nom. *Gorin* v. *United States*, 379 U.S. 971 [1965]; *United States* v. *Scheiblauer*, 472 F.2d 297, 301 [9th Cir. 1973]; *Commonwealth* v. *Aguiar*, 370 Mass. 490, 496 [1976]), because the standards governing the voluntariness of the defendant's actions are the same, regardless whether a search in the technical sense was involved. *Commonwealth* v. *Zeitler*, 7 Mass. App. Ct. 543, 547 (1979). "The voluntariness of the defendant's consent is a question of fact to be determined by the judge based on the circumstances of the case in their totality and not 'on the presence or absence of a single controlling criterion.'"

*Commonwealth* v. *Zeitler, supra* at 547, quoting from *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 226 (1973). See *Commonwealth* v. *Aguiar, supra* at 496; *Commonwealth* v. *Cantalupo,* 380 Mass. 173, 177 (1980). Consent is voluntary if it is free of coercion, express or implied, and arises from something more than the defendant's mere acquiescence to official authority. *Commonwealth* v. *Walker,* 370 Mass. 548, 555 (1976). See *Bumper* v. *North Carolina,* 391 U.S. 543, 548-549 (1968).

The voluntariness of Collins' conduct in this case is supported by evidence of his cooperative conduct and by the absence of trickery or threats on the part of the trooper. See *Commonwealth* v. *Campbell,* 352 Mass. 387, 401 (1967); *Commonwealth* v. *Zeitler, supra* at 547. The fact that Duffy did not specifically advise Collins that he could refuse to answer the inquiry about the case would not require a finding that the consent was involuntary. This was but one factor to be considered among many. See *Schneckloth* v. *Bustamonte, supra* at 248-249; *Commonwealth* v. *Walker, supra* at 555; *Commonwealth* v. *Harmond,* 376 Mass. 557, 561 (1978). There was no evidence that Collins' faculties were impaired in any respect, nor any evidence that the trooper employed direct or indirect coercion to obtain the metal case. The evidence supports the judge's determinations that the question as to the metal object was purely routine in nature and proper and that Collins spontaneously offered the case (see *Commonwealth* v. *Aguiar, supra* at 497) in the hope that it would divert the trooper from initiating a search which might lead to discovery of the ammunition on his person and the cargo of weapons hidden in the trunk. The judge's refusal to suppress the firearms was justified on the facts found and was not tainted by error of law. See *Commonwealth* v. *Murphy,* 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring); *Commonwealth* v. *Sires,* 370 Mass. 541, 544 n.1 (1976); *Commonwealth* v. *Wilborne,* 382 Mass. 241, 251 (1981); *Commonwealth* v. *Angivoni,* 383 Mass. 30, 33 (1981); *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 166 (1980).

3. We have reviewed the questioned portions of the prosecutor's closing remarks in light of the final argument as a whole, the judge's instructions, and the evidence and reasonable inferences that could be drawn therefrom. There is nothing in the remarks which would call for us to wring our hands in print or which would justify a new trial. See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416-418, 420-424 (1978).

4. The defendant's motion for new trial raised nothing beyond what has already been discussed. It was properly denied.

The judgments on indictments nos. 90519 and 90520 are affirmed.

*So ordered.*