COMMONWEALTH *VS.* JOHN E. LEGER.

No. 99-P-1883.

Middlesex. February 12, 2001. - August 8, 2001.

Present: ARMSTRONG, C.J., GREENBERG, & COWIN, JJ.

*Protective Order. Abuse Prevention. Due Process of Law,* Abuse prevention. *Practice, Criminal,* Instructions to jury. *Intent. Statute,* Construction. *Notice.*

At the trial of a complaint charging violation of a protective order, the judge properly excluded certain irrelevant evidence, offered by the defendant, regarding his understanding of the meaning of the unambiguous terms of the protective order. [234-235]

At the trial of a complaint charging the defendant with violations of the no-contact provisions of a protective order, which prohibited the defendant from contacting his former wife but did not, either by its own terms or by reference to any other order, limit his right to contact his children, the judge erred in declining to instruct the jury to consider whether the defendant's contacts were merely incidental contacts that occurred in the course of a legitimate attempt to telephone their daughter and therefore were not a violation. [235-238]

A criminal defendant failed to demonstrate that he lacked fair notice as to what contact was forbidden by the provisions of a protective order entered under G. L. c. 209A, § 3, where the language of both the order and the statute was clear. [239-241]

Alleged police misconduct in failing to provide a criminal defendant with notice and an opportunity to be heard prior to the issuance of process upon a complaint for violation of a protective order, in accordance with G. L. c. 218, § 35A, did not require dismissal of the complaint or preclude a subsequent prosecution. [241-243]

COMPLAINT received and sworn to in the Concord Division of the District Court Department on April 22, 1999.

The case was tried before *Paul L. McGill,* J.

*Theodore F. Riordan* for the defendant.

*Eric R. Barber-Mingo,* Assistant District Attorney, for the Commonwealth.

COWIN, J. After a six-person jury trial in the District Court,

the defendant was found guilty of violating the "no contact" provision of a G. L. c. 209A restraining order on April 21, 1999. He was acquitted on a separate charge alleging a violation of the same order on March 16, 1999. The defendant appeals.

The defendant asserts that he lacked adequate notice that the contacts that took place on April 21, 1999, were precluded by the restraining order. He argues further that, because he reasonably believed that the restraining order was not in effect on April 21, 1999, the Commonwealth's proof of his guilt was deficient; that the complaint should have been dismissed because the issuance of process was not preceded by notice and an opportunity for the defendant to appear before a clerk-magistrate under G. L. c. 218, § 35A; and that the complaint should have been dismissed on the bases of the absence of the § 35A hearing and of alleged police misconduct. We conclude that, while the defendant had adequate notice of the prohibitions contained in the restraining order, he was entitled to an instruction and to a jury determination regarding the effect of an incidental contact. *Commonwealth* v. *Silva*, 431 Mass. 194, 198 (2000). Accordingly, we reverse. To the extent that the defendant's remaining contentions may arise again at a retrial, we address them as well.

1. *Facts.* The jury could have found the following essentially uncontested facts. The defendant and his wife, Ellen Lynn Leger (Ellen), were divorced in 1988. The couple's two teenage children thereafter lived with Ellen.[1] On February 10, 1995, upon application by Ellen, the District Court entered an abuse prevention order which, in relevant part, ordered the defendant "not to contact the plaintiff . . . either in person, by telephone, in writing or otherwise, either directly or through someone else. . . ." This order was extended on February 9, 1996, until

---

[1] An order of the Probate and Family Court provided that the defendant was permitted to have contact with the couple's children if such contact were initiated by them. There was conflicting evidence whether such initiation had occurred prior to the calls at issue in this case. The relevance, if any, of this order is discussed *infra* at 236.

February 7, 1997. On February 7, 1997,[2] it was extended again until February 6, 1998. On February 6, 1998, with the defendant present in court,[3] the order was further extended and this time made "permanent."

On March 16, 1999, the defendant called Ellen's residence. When Ellen answered the telephone, he asked to speak to their daughter. Ellen responded that a restraining order was in effect and that he was not to call her house. She then hung up. The defendant called back about one minute later, stated that he knew that he was not supposed to call her (Ellen), and reiterated his desire to speak with their daughter. Ellen again hung up. She subsequently reported the calls to the police. In response to a telephone inquiry by a police detective, the defendant admitted that he made the calls. On March 24, 1999, the first of the two complaints against the defendant issued.

On April 21, 1999, the defendant called Ellen's residence again, and Ellen again answered. He requested to speak to their daughter about the Columbine (Colorado) High School shootings which had taken place on the previous day. The call upset Ellen, who told the defendant not to call again and hung up. The defendant called back within one minute and again demanded to speak to their daughter — this time asserting that the restraining order was not valid. Ellen again hung up. Moments later, the defendant called a third time and demanded to speak to their daughter about the Columbine shootings. Ellen hung up and this time called the police. An officer called the defendant, who stated that he had made the calls in order to speak to his daughter. The second complaint issued on April 22, 1999, and the defendant was arrested on April 26, 1999.

2. *Issues of notice and incidental contact.* The defendant argues that he was not given adequate notice that the chapter 209A restraining order prohibited the conduct in which he engaged and for which he was convicted: specifically, calling Ellen's residence to speak to their daughter and speaking as he

---

[2]The order recites that the date of this extension was "2/7/98." It is clear from the context that "2/7/97" was intended.

[3]The defendant was present in court at each of the extensions. It is not clear whether he was present at the time of entry of the initial order. That order indicates, however, that the defendant was served in hand.

did to Ellen when she answered the telephone. In justification of his claimed uncertainty about the meaning of the no-contact order, he sought at trial to introduce evidence that a clerk-magistrate had declined to issue process upon an earlier complaint (in 1998) arising out of a similar effort on his part to telephone his daughter at Ellen's residence. This evidence was properly excluded by the trial judge. The order contained nothing which was even faintly ambiguous: "YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF . . . either in person, by telephone, in writing or otherwise, either directly or through someone else. . . ." Three elements had to be proved in order to obtain a conviction: (a) that such an order was in existence; (b) that the defendant knew of its terms; and (c) that the defendant violated those terms. *Commonwealth* v. *Basile*, 47 Mass. App. Ct. 918, 919 (1999). *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. 699, 704-705 (2001). Thus, given this order's clarity, what the defendant may have *thought* the order meant— whether based upon a prior clerk-magistrate's hearing or otherwise—is irrelevant, and the trial judge properly excluded evidence of the earlier action of the clerk-magistrate.

However, it was error to refuse to instruct the jury that it could find that the defendant's contacts with Ellen which occurred in the course of his attempt to speak to their daughter were incidental contacts, and that, if the jury so found, such contacts did not constitute a violation of the chapter 209A order. *Commonwealth* v. *Silva*, 431 Mass. 194, 198 (2000).[4] The defendant requested, inter alia, that the jury be instructed that there could be no guilty finding if the defendant's "contact with [Ellen] was incidental to his exercise of a right not prohibited by the order." The judge declined to give such an instruction.[5] Instead, the judge instructed that, to obtain a guilty verdict, the Commonwealth must prove four things: (1) that a court had issued an order prohibiting the defendant from contacting Ellen;

---

[4]At the time of trial of this case on May 25-26, 1999, the trial judge did not have the benefit of the Supreme Judicial Court's ruling in *Commonwealth* v. *Silva*, *supra*.

[5]This was so notwithstanding a statement by the prosecutor during a discussion of the proposed instruction that "this is a matter for the jury whether the contact was incidental. That is for the jury to decide based on all the evidence that they've heard."

(2) that the order was in effect on the date the violation allegedly occurred; (3) that the defendant knew the pertinent terms of the order; and (4) that the defendant "violated the order by contacting Ellen Leger." The judge then expanded upon the fourth element by charging that the jury "should determine if the believable evidence indicates that Mr. Leger knew or should have known that it was likely that Mrs. Leger would answer the phone on any one or more times" on the date in question. He made no further reference to the possibility or effect of incidental contact.

During their deliberations, the jury submitted a question as follows: "When contact is made, can we consider the issue of inadvertent contact, i.e. *intent*?" (emphasis original). The judge responded by repeating his instruction that the jury should determine whether the defendant knew or should have known that it was likely that Ellen would answer the telephone. He then added that the jury must return a verdict of not guilty if they found that the defendant did not know or could not have known that Ellen was likely to answer the telephone. The judge again made no further comment regarding the significance of incidental contact.

The "no-contact" order issued under chapter 209A to which the defendant was subject did not, either by its own terms or by reference to any other order, limit the right of the defendant to have contact with his children. A separate order entered by the Probate and Family Court did limit the defendant's rights in this regard by requiring that such contact take place only when initiated by the children. The District Court order did not incorporate this limitation or make any reference to it. While the Probate and Family Court order is separately enforceable by contempt proceedings, it cannot be imported into the chapter 209A order for the purpose of exposing the defendant to greater jeopardy in a criminal case. Cf. *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. at 708. The chapter 209A order stands on its own as defining the conduct which is prohibited for criminal enforcement purposes. Thus, for the purpose of *this* case, the defendant's effort to contact his daughter, at least in the first instance, must be deemed to have been lawful.

This being the case, the jury should have been instructed to

consider whether the defendant's contacts with Ellen, including the two rapid repetitions after Ellen hung up the telephone after the first call, were incidental to a legitimate attempt to telephone their daughter, and, if so, that such incidental contact was not a violation of the chapter 209A restraining order. It was not sufficient to direct a consideration only of the probability of Ellen answering the telephone and the defendant's awareness thereof. The defendant was entitled to have the jury decide whether his actions on April 21, 1999, were a violation of the order, or merely an incidental contact that occurred in the course of a permitted activity and therefore not a violation. The instructions did not allow the jury adequate room to make this determination.

This result is consistent with the Supreme Judicial Court's recent decision in *Commonwealth* v. *Silva, supra,* and is logical given the realities of no-contact orders issued under circumstances where the defendant is permitted to have contact with other family members. In *Silva,* the court considered an alleged violation by a defendant of a chapter 209A order prohibiting contact of any kind with his ex-wife, but permitting him to telephone the couple's children at certain designated times.[6] As in the present case, the defendant telephoned his ex-wife's residence to speak to his older daughter. In the process, he made contact with his ex-wife when she answered the telephone.

The court stated: "A no-contact order like this one would not be violated when a father has to speak on the telephone with a protected woman, in order to speak with his children, and he does so briefly, and in a direct and nonabusive way. Such contact would be a lawful incident of the order because there may be no other way for the father to exercise his right to reach his children. This brief and inevitable contact, however, cannot be used as an occasion to harass, threaten, or intimidate the protected party. That form of conduct crosses the line between lawful incidental conversation, permitted by the order, and a

---

[6]The no-contact order at issue in the case before us did not contain an express authorization with respect to calls by the defendant to his children. The order is silent on the subject, and, for the reasons stated above, it is clear that such calls were not prohibited. The distinction between the orders is not significant for the purpose of applying the reasoning of *Commonwealth* v. *Silva, supra.*

substantive violation of its terms." *Commonwealth* v. *Silva, supra* at 198.

The *Silva* opinion addresses the practical possibility that the enjoined party may encounter resistance during an incidental contact with the protected party. In that case, the defendant "went beyond permissible incidental contact by using abusive and threatening language directed at his former wife." *Id.* at 199. The court observed, however, that the "violation was not, in any sense, unavoidable," and suggested that the defendant's "most obvious option" was to "respond calmly, without oaths or threats," that he had a right to speak with his daughter. *Ibid.*[7] Accordingly, it is clear that the enjoined party is not required simply to abandon his effort when an otherwise lawful attempt to contact a third person brings about an incidental contact with the protected party.

On the record before us, it was a question of fact whether the defendant's telephone calls on April 21, 1999, were permissible incidental contact or impermissible contact which "crossed the line" and constituted a violation of the order. This question should have been presented to the jury with appropriate instructions. The jury could consider, among other things, the length and character of the conversations; the fact that the defendant's efforts were in each instance interrupted by Ellen's hanging up; and the fact that the defendant twice renewed the contact knowing that it was reasonably likely that Ellen would answer the telephone. The jury could, in addition, consider whether the defendant was genuinely motivated by a lawful purpose, or whether his stated claim to speak to his daughter was merely a pretext to justify an attempt to make contact with Ellen. Here, given the various considerations, it was not for the judge to determine, as in effect he did, that the contacts in question were not incidental contacts as a matter of law.[8]

---

[7]As an alternative, but not an exclusive alternative, the enjoined party may seek relief from the court which issued the order.

[8]The judge's instruction that the jury could consider the defendant's awareness of the likelihood that Ellen would answer the telephone was not by itself an adequate equivalent of an instruction on incidental contact. It placed too much emphasis on a single element. Indeed, it invited a conviction since it was apparent in this case that the defendant, in pursuing his right to speak to

We consider the remaining issues insofar as they may be relevant at any retrial.

3. *Effectiveness of the chapter 209A order.* The defendant argues that, on the date of the calls for which he was convicted (April 21, 1999), it was unclear whether a no-contact order entered under G. L. c. 209A, § 3, could lawfully remain in effect for more than one year without a court-approved extension. He asserts that, given this uncertainty, he did not receive "fair warning that the . . . conduct was prohibited," and that consequently he should be relieved of criminal responsibility because of the unsettled state of the law. *Commonwealth* v. *Chretien*, 383 Mass. 123, 132 (1981).

Chapter 209A was inserted in the General Laws in 1978. St. 1978, c. 447, § 2. No-contact orders of the type issued in this case are authorized by G. L. c. 209A, § 3. Prior to 1990, the duration of such orders was governed by the following language: "Any relief granted by the court shall be for a fixed period of time not to exceed one year, at the expiration of which time the court may extend any order, upon motion of the plaintiff, for such additional time as it deems necessary to protect the plaintiff from abuse." In 1990, the section was amended in relevant part to read as follows: "Any relief granted by the court shall be for a fixed period of time not to exceed one year. . . . If the plaintiff appears at the court at the date and time the order is to expire, the court shall determine whether or not to extend the order for any additional time reasonably necessary to protect the plaintiff *or to enter a permanent order*" (emphasis supplied). The amendment, which was added by St. 1990, c. 403, § 3, became effective on January 31, 1991.

This seemingly clear authorization did not escape subsequent efforts to mystify it. In Guidelines for Judicial Practice: Abuse Prevention Proceedings (June, 1997), published by the Administrative Office of the Trial Court, § 6:02 provided that "[e]ach permanent order for relief should be for a period of one year, unless the plaintiff requests a lesser period or the court finds that a lesser period is warranted by the circumstances." Similarly, § 6:08 then stated: "If, after a full hearing, an order

his daughter, knew that it was likely that Ellen would answer on his second and third attempts.

was issued for one year or some lesser period of time, that order may be extended for up to another year at, or prior to, its expiration date. . . ."[9] It is unclear whether the Administrative Office offered this guidance because of a view that the statute (despite the 1990 amendment) precluded the issuance of orders to be effective for more than one year, or because the authors believed that orders for more than one year were, while permissible, nonetheless undesirable. Those who preferred the former interpretation were emboldened by a reference in *Champagne* v. *Champagne*, 429 Mass. 324, 326 (1999), to protective orders under G. L. c. 209A as having express time limits of one year.

Any possible dispute concerning the time limitations on protective orders under G. L. c. 209A was ended by the Supreme Judicial Court in *Crenshaw* v. *Macklin*, 430 Mass. 633, 635 (2000). The court held that the one-year limitation applied only to the relief granted in connection with an initial complaint, and that judges were empowered to issue permanent orders at any renewal hearing. Referring to the 1990 amendment which added language expressly conferring the power to enter permanent orders, the court stated that "[a]ny ambiguity in the earlier statute was thereby resolved." *Id.* at 636.

"We have not hesitated to relieve defendants of criminal responsibility where the law was so unsettled or unclear that it did not provide fair notice of what conduct was forbidden." *Commonwealth* v. *Chretien*, 383 Mass. at 132. The defendant contends that the principle should apply in the present case because, at the time of his telephone calls to Ellen's residence on April 21, 1999, *Crenshaw* v. *Macklin* had not been decided and the validity of a chapter 209A no-contact order in effect for more than one year was in doubt. The defendant's attempt to apply the language of *Commonwealth* v. *Chretien* to his situation is not convincing.

The defendant does not challenge the proposition that he had notice of the issuance of a court order which directed him "not to contact the plaintiff . . . either in person, by telephone, in writing or otherwise. . . ." Furthermore, he was on notice that

---

[9]Sections 6:08 and 6:09 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (December, 2000), recognize the validity of permanent restraining orders.

on February 6, 1998, a judge of the District Court had extended the order on a permanent basis. There could have been no reasonable doubt on his part that this order by its express terms prohibited him from contacting Ellen on April 21, 1999, and at any other time. He was clearly "on notice of the possible criminality of his conduct." *Commonwealth* v. *Klein*, 372 Mass. 823, 833 (1977).

Even if the defendant is given the benefit of every doubt, the most that he could not have known was whether the unambiguous prohibition against contacting Ellen was still in effect on April 21, 1999. If his calls on that date were in fact informed by a supposition on his part that the no-contact order had expired, he nevertheless accepted the risk that his judgment regarding the order's validity might be in error. Any uncertainty that the order remained in effect was susceptible to resolution by means of an appropriate motion. He could choose to test the order's validity as he did, but he then cannot be heard to complain that he was in some fashion misled by his own mistake. Given the plain language of the order, together with what we believe was the plain language of G. L. c. 209A, § 3, with the 1990 amendment, this is not a case in which the defendant lacked fair notice as to what conduct was forbidden. *Commonwealth* v. *Chretien*, *supra* at 132.

4. *Right to a G. L. c. 218, § 35A, hearing.* The defendant asserts that he was deprived of his statutory right under G. L. c. 218, § 35A, to notice and an opportunity to be heard prior to the issuance of process upon the complaint for violation of the chapter 209A no-contact order.[10] The defendant now claims

---

[10] "If a complaint for a misdemeanor is received by a district court, . . . the person against whom such complaint is made, shall, if not under arrest for the offense for which the complaint is made, upon request in writing, seasonably made, be given an opportunity to be heard personally or by counsel in opposition to the issuance of any process based on such complaint. . . ." G. L. c. 218, § 35A, as appearing in St. 1945, c. 293. Written notice of such a complaint must be given to such person "unless there is an imminent threat of bodily injury, of the commission of a crime or of flight from the commonwealth. . . ." G. L. c. 218, § 35A, as inserted by St. 1978, c. 478, § 193. "The three § 35A exceptions (bodily injury, commission of a crime, and flight from the jurisdiction) are aimed at preventing various forms of retaliation by the defendant upon his receipt of notice. . . ." *Gordon* v. *Fay*,

that, because of the absence of the § 35A hearing, the conviction which was ultimately rendered should be set aside.

It is undisputed that no show-cause hearing was conducted. Following the telephone calls of April 21, 1999 (the calls for which the defendant was convicted), the police obtained a complaint and an arrest warrant. Based upon the police report, it appears that the police were inspired to seek an arrest warrant by the fact that the defendant had apparently violated the restraining order twice within a relatively short period. Complaints for violations of orders issued under G. L. c. 209A, § 3, are not immune from the requirement of a show-cause hearing under G. L. c. 218, § 35A. *Commonwealth v. Tripolone,* 44 Mass. App. Ct. 23, 28 n.9 (1997). However, notice and an opportunity to be heard need not be provided if one of the § 35A exceptions applies. In addition, G. L. c. 209A, § 6, par. (7) provides for arrest of a defendant under certain circumstances (thereby obviating the requirement of a § 35A proceeding since the defendant will be "under arrest for the offense for which the complaint is made . . .").

The defendant's right to a show cause hearing is not mandated by the United States Constitution or by the Massachusetts Declaration of Rights. It is a creature of statute only. Accordingly, assuming without deciding that the defendant was deprived of a § 35A hearing and was arrested unlawfully, such violations by the authorities do not require dismissal or preclude a subsequent prosecution. *Commonwealth v. Hill,* 49 Mass. App. Ct. 58, 61 (2000), citing *United States v. Crews,* 445 U.S. 463, 474 (1980). Had such a motion to dismiss been filed prior to trial, the defendant would have been entitled, at most, to a dismissal without prejudice, after which the complaint could be filed again and a show-cause hearing then provided. *Commonwealth v. Lyons,* 397 Mass. 644, 648 (1986). *Commonwealth v. Tripolone, supra* at 28 n.10. The due process accorded the defendant at a full trial with jury more than compensates for whatever he may theoretically have lost as a result of the absence of a § 35A hearing before a clerk-magistrate.

5. *Alleged police misconduct.* The defendant accuses the

---

382 Mass. 64, 72 (1980). They do not refer to the acts which form the basis of the complaint. *Ibid.*

police of misconduct because they obtained a warrant for his arrest rather than seeking a show-cause hearing under G. L. c. 218, § 35A. From all indications, the decision of the police was made in good faith. The defendant was not prejudiced for the reasons set forth in section 4 above. *Commonwealth* v. *Lyons*, *supra* at 648-649 is not to the contrary.

6. *Conclusion.* For the reasons stated, we reverse the judgment of conviction and set aside the verdict.

*So ordered.*