## Commonwealth *vs.* Carlton W. Raymond.

No. 00-P-1143.

Essex. October 9, 2001. - April 12, 2002.

Present: Lenk, Cowin, & McHugh, JJ.

*Protective Order. Abuse Prevention. Intent. Practice, Criminal,* Instructions to jury.

A criminal defendant adequately preserved for appeal his objection to jury instructions regarding the conditions required for a conviction on a complaint alleging violation of a "no contact" abuse prevention order. [491]

At the trial of a complaint alleging violation of a "no contact" abuse prevention order, where the evidence was in conflict on the key issue of whether the defendant's contact with his ex-wife was either incidental to a permitted activity or an accidental, mistaken, or unknowing violation, the trial judge's failure to instruct the jury that these considerations were relevant to their determination whether there had been a violation of the abuse prevention order constituted prejudicial error. [491-494]

COMPLAINT received and sworn to in the Salem Division of the District Court Department on November 29, 1999.

The case was tried before *Robert A. Cornetta,* J.

*Ronald M. Stone* for the defendant.

*James A. Janda*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant was convicted by a jury of violating an abuse prevention order issued under G. L. c. 209A that contained, among other things, a provision that he have "no contact" with his ex-wife, Veronica. He alleges that there was prejudicial error because the judge failed to instruct the jury regarding the "voluntariness" of his actions. We hold that, given the evidence presented, the judge should have instructed that the defendant could not be convicted for an inadvertent violation of the order. Accordingly, we reverse the conviction and remand the case to the District Court.

1. *Stipulations and material evidence.* The parties stipulated to three of the conditions that the Commonwealth was required to prove in order to convict under G. L. c. 209A, § 7, see·*Commonwealth* v. *Delaney*, 425 Mass. 587, 595-597 (1997), specifically, (a) that a court had issued an order prohibiting the defendant from contacting Veronica; (b) that the order was in effect on the date of the defendant's alleged violation; and (c) that the defendant knew the terms of the order. The parties disagreed on the critical fourth element, i.e., whether the defendant violated the order.

The Commonwealth's evidence in its essential parts was that the defendant owned with his mother a house in Middleton where his mother resided. The house in Middleton had been condemned by the local authorities and the house had to be cleaned. On the day in question, Veronica (as noted, the defendant's ex-wife) and the couple's two sons, Steven and Carlton, III, drove to the Middleton house to undertake the removal of items. A truck which they had engaged to haul the items away was parked in front of the house, so they parked across the street in a neighbor's driveway. While they were in the house, the defendant entered. He was angry and swearing, and, after a few words, swung at Steven. Steven and his brother pinned him to the kitchen table and Veronica, who had witnessed the encounter, called the police. His sons offered to release him if he would agree to leave, but the defendant refused. When the police arrived, the defendant stated that he had known Veronica would be present when he came to the house.

The defendant disputed the Commonwealth's version. He testified that he went to the Middleton house to get clean clothes and to start emptying the house. When he arrived, he did not see his wife's car and did not know that she was present. He observed a truck loaded with items from the house, and also saw that the front door had been removed from its hinges. He entered the house and, confronting his son Steven, accused him of being a heroin user and attempted to look in his eyes. Steven responded by pushing the defendant toward the back table, calling to his brother to give him a knife and to help him throw the defendant out the window. They then together held him against the table despite the defendant's demand to be released, and

called to their mother to get the police. According to his testimony, he had not seen his wife until she came running into the house in response to their sons' shouts that she call the police.

2. *The jury instructions.* In preliminary instructions, the judge informed the jury that the parties agreed on three of the conditions required for a conviction, but disagreed on the fourth, specifically whether the defendant had violated the restraining order. He characterized that dispute as the issue to be decided. At the close of the evidence, the judge again recited the four items that the Commonwealth was required to prove beyond a reasonable doubt, even though the defendant had stipulated to three of them. He defined the fourth item as whether "the defendant violated the order by abusing the alleged victim or failing to vacate the household or workplace located at a particular address or reentering the household or workplace located at a particular address or by contacting the alleged victim." Given the evidence, including that the Middleton house was not the house in which the defendant and his ex-wife had lived together and was not the house that the defendant had been ordered to vacate, it is obvious that only the last of these possible violations (i.e., "contacting the alleged victim") was involved.

The judge then defined the term "abuse," although there appears to have been no reason to do so in light of the fact that the evidence did not warrant a finding of "abuse," but only a finding of impermissible contact. He then reiterated that there was only one issue outstanding, namely "whether or not on the date and time in question with all of the evidence taken as [a] whole as you find it, this defendant violated the order that had been issued by the Gloucester District Court." The judge did not define further what constituted a violation, and the jury retired to deliberate. The defendant did not object to the charge.

Subsequently, the jury returned with two questions: (1) "[A]re we as jurors [to] decide[] whether he violated it or intended to violate it?" and (2) "Are you violating a restraining order if you are unaware of the party being within 100 yards?" The judge consulted with counsel. Defense counsel touched exceedingly briefly on the significance of a defendant being unaware

that he was in violation. The judge considered, but then rejected, the proposition that a defendant who had no knowledge of the presence of the protected person could not be convicted. Despite the observation of defense counsel that the jury's questions would not be answered, the judge chose to reiterate that the issue to be decided was "whether or not the Defendant's actions as you find them to be constituted a violation of the order." He then repeated the four elements that had to be proved (on three of which there had been stipulations). He also repeated the definition of "abuse." The defendant did not object while the jury were still in the courtroom. However, on inquiry by the judge after the jury retired whether either party wished to object to the response as given, the defendant did at that point voice an objection.

3. *Discussion.* We address first the Commonwealth's contention that the defendant's objection to the instructions was not adequately preserved. We disagree. The defendant introduced, albeit briefly, the concept that lack of awareness of the protected person's presence might be significant and, when the judge indicated that it was his intention to repeat his prior instructions, expressed the view that such an approach would not be responsive to the questions posed by the jury. Defense counsel admittedly formally objected only after the jury had retired, but did so in response to an invitation by the judge. "[T]he point was brought to the judge's attention, and he rejected it." *Commonwealth* v. *Biancardi*, 421 Mass. 251, 254 (1995). The judge had adequate warning before the jury retired that his instructions may have been inadequate, and he could have altered them had he seen fit to do so. It was also within the judge's power to call the jury back for further instruction. In any event, even if the issue had not been properly preserved, the result here would be no different. The omission from the instructions was significant and created a substantial risk of a miscarriage of justice, the standard of review applicable to unpreserved error.

As to the substance of the defendant's claim, he assigns as error the decision of the judge not to instruct regarding the "voluntariness" of the defendant's actions. "Voluntariness" as a suggested element is close to a proposition that the Com-

monwealth must prove that the defendant *intended* to violate the restraining order, a holding which, as the Commonwealth observes, has been rejected by the Supreme Judicial Court. See *Commonwealth* v. *Delaney*, 425 Mass. 587, 596-597 (1997); *Commonwealth* v. *Collier*, 427 Mass. 385, 389 (1998). However, if analytically we depart from a concept that a violation must be intentional or "voluntary," and examine instead whether a violation may be unknowing, accidental, or inadvertent, the deficiency in the instructions as given becomes apparent.

A brief review of relevant cases may be helpful. To convict a defendant of violation of a c. 209A order, the Commonwealth must prove beyond a reasonable doubt that a court had issued such an order; that the order was in effect on the date that the violation allegedly occurred; that the defendant knew the pertinent terms of the order; and that the defendant violated the order. *Commonwealth* v. *Delaney, supra*. While intent is an element in criminal contempt proceedings, it was held not to be an element of the crime of violating a c. 209A order. "The statute . . . requires no more knowledge than that the defendant knew of the order. We decline to read any additional mens rea requirements into the statute." *Ibid.*

That a conviction did not require proof of actual intent to violate an order was reiterated in *Commonwealth* v. *Collier, supra* at 388. There, however, confronted with evidence that would have permitted the jury to find that the defendant was, without his acquiescence, driven by his son to a place within impermissible proximity to the protected person, the Supreme Judicial Court held that "[w]here the evidence fairly raises an issue as to the defendant's intent either to direct, or acquiesce in, conduct of a third party, there must be proof that the defendant at least intended the act that resulted in the violation." *Id.* at 389-390. Because the defendant may have been prejudiced by the absence of such an instruction, the judgment of conviction was reversed.

That the state of mind of the defendant, apart from his awareness of the terms of the restraining order, would sometimes be relevant was explored in a different context in *Commonwealth* v. *Silva*, 431 Mass. 194 (2000). There, a restrained husband made contact with his protected divorced wife when he telephoned her residence for the purpose of speaking to the

couple's teenage daughter. Such a call was authorized by the terms of the c. 209A order. The Supreme Judicial Court characterized the contact that occurred between the parties when the ex-wife answered the phone as "a lawful incident of the order," *id.* at 198, which would not by itself be sufficient to prove a violation.[1] See, in this regard, *Commonwealth* v. *Leger*, 52 Mass. App. Ct. 232, 237 (2001), which held on the facts of that case that the defendant was entitled to an instruction that "an incidental contact" occurring in the course of a permitted activity was not a violation of the c. 209A order.

These cases suggest, as does common sense, that a defendant cannot be convicted of violating a "no contact" order issued under c. 209A where the contact occurs in circumstances where the defendant did not know, and could not reasonably have been expected to know, that the protected person would be present. We view this proposition as nothing more than an application of the principle enunciated by the Supreme Judicial Court in *Commonwealth* v. *Silva, supra.* It is consistent with the traditional view that, in the absence of specific language to the contrary, the Legislature does not intend to make accidents and mistakes crimes. *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 364 (1982), citing *State* v. *Brown*, 38 Kan. 390, 393 (1888). In the context of a prosecution for violation of a "stay away" order issued under c. 209A, the Supreme Judicial Court has recently suggested that "accidental, mistaken, or unknowing violations of the distance requirements of an abuse prevention order" will not be sufficient by themselves to support a conviction under G. L. c. 209A, § 7. See *Commonwealth* v. *Finase*, 435 Mass. 310, 315 (2001). The policies that are advanced by means of the remedies available under c. 209A do not require that restrained parties be convicted for what would generally be considered innocent activities. To hold otherwise would incorporate into the statute a concept of strict liability, and there is no basis for believing that this was the Legislature's purpose.

Applying these principles to the facts of the present case, we encounter evidence that is in conflict on the key issue of whether

[1]In *Silva*, the incidental contact between the parties degenerated into an angry outburst on the part of the defendant that warranted the finding that the c. 209A order had been violated. *Id.* at 198-199.

the defendant's contact with his ex-wife was either incidental to a permitted activity, see *Commonwealth* v. *Silva, supra,* or an accidental, mistaken, or unknowing violation, see *Commonwealth* v. *Finase, supra,* as opposed to a contact that is neither incidental nor accidental. The defendant testified that he had gone to his mother's house to obtain clothing and to commence the removal of its contents. The order in question did not preclude him from going to the house, nor did his entry there violate anything independent of the mandate of the order. He stated that he did not know that his ex-wife was present until his sons called to her and she entered from outside. He testified that, prior to learning that his ex-wife was there, he was attacked by his sons, forcibly restrained, and not permitted to leave despite his requests to do so.

If the jury believed this version, they could have found that the defendant's contact with Veronica was incidental to a permitted activity, or an accidental, mistaken, or unknowing violation, or even a coerced violation given that the contact took place while he was restrained by his sons. But neither the judge's general instructions nor his response to the jury's questions communicated to the jury that these considerations were relevant to a determination whether there had been a violation of the c. 209A order. Instructing only that it was up to the jury to decide on all the evidence whether a violation had occurred at best left the jury without guidance as to what constituted a violation, and at worst invited the jury to apply a strict liability standard. This misstep was particularly inopportune here, given that the jury, through their questions, evinced confusion and concern over these very issues. Under the circumstances, the failure to explain the significance of an incidental or accidental contact was prejudicial error.[2]

*Judgment of conviction*
*reversed.*

*Verdict of guilty set aside.*

---

[2]As indicated above, even had the objection not been preserved, the error created a substantial risk of a miscarriage of justice.