## Commonwealth *vs.* Blair L. Consoli.

No. 01-P-1130.

Essex. February 6, 2003. - August 5, 2003.

Present: Beck, Mason, & McHugh, JJ.

*Abuse Prevention. Protective Order. Practice, Criminal,* Instructions to jury. *Words,* "Contact."

At the trial of a complaint charging violation of protective orders issued pursuant to G. L. c. 209A, § 7, prohibiting the defendant from contacting his son and former wife, the judge did not err in declining to give an instruction to the jury stating that the defendant could not be found guilty of violating the no contact order unless the Commonwealth proved that he intentionally initiated the prohibited contact, where the judge's instruction to the jury that, to prove a violation of the order, the Commonwealth was required to prove that the defendant communicated with his son "voluntarily and intentionally and not because of mistake, accident, negligence or other innocent reason" contained the essence of what the defendant sought; where there was nothing "accidental" about the defendant's contact with his son; and where the defendant's additional request for an instruction on an intentional, conversation-ending response to an unsolicited greeting was not brought clearly to the judge's attention. [737-741]

At the trial of a complaint charging violation of protective orders issued pursuant to G. L. c. 209A, § 7, prohibiting the defendant from contacting his son and former wife, the judge did not err in failing to excise from copies of the orders introduced in evidence a portion that read "you are ordered not to contact the plaintiff . . . even if the plaintiff seems to allow or request contact," where the language of the order was clear, the language was highly relevant to the charge against the defendant, and the statute permitted the prohibition the language embodied. [741-742]

Complaint received and sworn to in the Salem Division of the District Court Department on September 9, 1999.

The case was tried before *Mary A. Orfanello*, J.

*Christopher R. Hopkins* for the defendant.

*James A. Janda*, Assistant District Attorney, for the Commonwealth.

McHugh, J. A chance schoolyard encounter between the

defendant, his former wife and their son led to a conversation among the three. At the time, orders issued pursuant to G. L. c. 209A, § 7, prohibited the defendant from contacting his son and former wife. As a result, a two-count complaint soon issued charging the defendant with violating the orders. A jury trial ensued, and he was convicted on both counts and sentenced to concurrent terms of probation. On this appeal, the defendant contends that the trial judge should have given an instruction on intent, and that her failure to excise certain language from copies of the orders introduced in evidence amounted to prejudicial error.[1] We affirm.

Up to a point, the Commonwealth and the defendant agree on the material facts. After the defendant and Evelyn, his wife, were divorced, Evelyn obtained custody of their son, whom we shall call John. The evidence is not entirely clear on who obtained custody of the couple's two daughters, one of whom does not figure in this case and the other of whom we shall call Mary.

John was in elementary school and Mary was in high school when the conversation of present interest occurred. Because the elementary school building was being rehabilitated, John and his classmates temporarily attended classes in the high school building. To keep the high schoolers from mixing with the grade schoolers, grade school dismissal and parental pickup occurred fifteen minutes before, and at a different location from, high school dismissal.

On the afternoon of the first day of school in September, 1999, the defendant and his father went to the school in an automobile to pick up Mary. The defendant drove and his father sat in the right front passenger seat. Evelyn and a friend also drove to the school to pick up John. At the time, the standard language of an effective c. 209A order[2] prohibited, inter alia, the defendant from contacting Evelyn or John "in person, by

---

[1]After filing his notice of appeal, the defendant filed a motion for new trial. He did not appeal from the subsequent order denying that motion and we consider no matters raised therein.

[2]The circumstances surrounding the order's issuance are here irrelevant. The Commonwealth and the defendant agree that the order was in effect and the defendant knew of its existence and its content.

telephone, in writing or otherwise . . . even if the Plaintiff[s, i.e., Evelyn and John,] seem[] to allow or request contact."[3]

Evelyn arrived at the school and found John waiting at the appropriate spot. She and John were walking toward Evelyn's parked car when they encountered the car the defendant was driving as that car moved slowly in thick traffic headed for the high school pickup location. Everyone agrees that the encounter occurred purely by chance.[4]

At this point, concordance ends. Evelyn testified that, upon seeing John, the defendant pulled his car to the side of the road about ten feet from her, lowered the window next to his father and called out to John "[h]ey, buddy, hey, buddy, how was your first day of school." According to Evelyn, she intervened just as John was beginning to say "hi" in response. The defendant testified that, as John saw him in the slow-moving car, "his face lit up," he said "hi, pop," and the defendant responded by saying "hi, [John], hi, buddy."[5]

In either case, it is undisputed that Evelyn jumped between

---

[3]The order contained an exception, not here relevant, that allowed weekly, hour-long supervised visits between John and the defendant.

[4]In addition to prohibiting "contacts," the relevant orders required the defendant to stay one hundred yards away from Evelyn and John. Nevertheless, the Commonwealth, no doubt considering the accidental nature of the defendant's closer approach, agreed that the case would proceed only on its claim that the defendant had violated the order's no contact provisions.

[5]It is possible that the defendant testified that he said either "hi, [John,] hi, buddy" or "hi, buddy, how was school?" Unfortunately, the transcript of this case was made from a tape apparently recorded on the marginal recording equipment now found in many of our trial courts and, like so many others we see, is consequently plagued by an "(inaudible)" at a crucial spot. Here is the exchange as it appears in the transcript after the defendant testified that he simply said "hi, buddy" in response to John's unsolicited greeting:

Q. "Okay. Did you say anything further to [John] at that point?"

A. "Everyone's saying I did. I don't remember saying anything else, but, '[h]i, buddy, how was school,' like I said, I don't [inaudible]."

It is impossible to tell from that passage whether the defendant was agreeing that he said "hi, buddy, how was school," or that he may have said it, or that he did not remember saying it. The difference between "hi, buddy" and "hi, buddy, how was school" is significant, for the latter response explicitly invites further discussion. Nevertheless, the jury could have adopted the view of the defendant's testimony most favorable to him, see *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 494 (2002), and the view of the evidence most favor-

John and the defendant and told the defendant that he was violating the restraining order by talking to John. She testified that he responded by saying "fuck you, you fat bitch." The defendant countered with testimony to the effect that he responded "[g]o for it, fat stuff," a comment about Evelyn he directed toward his father and "probably" laced with profanity.[6] According to Evelyn, a further admonition on her part produced another "[f]uck you, you fat bitch" from the defendant. Everyone agrees that whatever conversation occurred was brief and that the defendant's car moved on toward the high school pickup spot as quickly as traffic would permit, accompanied as it departed by a "[f]uck you, baldie" from Evelyn.

Based on that evidence, the defendant contends that he was entitled to an instruction stating, in essence, that he could not be found guilty of violating the no contact order unless the Commonwealth proved that he intentionally initiated the prohibited contact.[7] The encounter between himself, John and Evelyn was an unplanned event and, on his view of the evidence, see note 5, *supra*, the defendant simply responded briefly and unoffen-

---

able to the defendant determines the instructions to which he is entitled. See *Commonwealth* v. *Groome*, 435 Mass. 201, 220 (2001); *Commonwealth* v. *Williams*, 53 Mass. App. Ct. 719, 720-721 (2002).

[6] The defendant does not contend that his words were inaudible to Evelyn and John.

[7] Specifically the defendant sought two instructions. His first request was for the following:

> "The defendant is alleged to have violated the no contact provision of the restraining order involved herein. Please be advised that to prove this allegation the Commonwealth must establish beyond a reasonable doubt that the Defendant intended to contact the alleged victim. It must be shown that he made some affirmative action with an accompanying mental element of intent to cause the contact complained of in this matter. It is not the intent of the law to make accidents and mistakes criminal conduct under this statute. Therefore the Commonwealth must prove beyond a reasonable doubt that the Defendant intended to initiate contact involved herein and absent such proof you must find him not guilty."

The defendant's second request was for this:

> "Evidence has been introduced in this case which you may consider in determining whether the defendant intentionally committed an act

sively to John's greeting. He maintains that a short, civil response to an unsolicited greeting is not a violation of the restraining order.

The judge declined to give the precise instructions the defendant requested, but did instruct the jury that, to prove a violation of the order, the Commonwealth was required to prove that the defendant communicated with John "voluntarily and intentionally and not because of mistake, accident, negligence or other innocent reason." See *Commonwealth* v. *Finase*, 435 Mass. 310, 315 (2001). For several reasons, there was no error.

First, the judge's instruction in fact contained the essence of what the defendant sought, see note 7, *supra*, and she was under no obligation to instruct in the specific or even general language the defendant requested. See *Commonwealth* v. *Williams*, 388 Mass. 846, 857 (1983).

Second, as the judge correctly observed, there was nothing "accidental" about the defendant's verbal interchange with John. Although the defendant and John found themselves within hailing distance by chance or accident, the defendant's election to speak to John was an intentional act, regardless of who initiated their brief dialog.

The defendant finally suggests that the judge should have viewed his request as seeking an instruction to the effect that conviction required proof of something more than a short, polite response to John's unsolicited greeting.[8] It may well be that a

---

that was a criminal offense, or whether what occurred was a pure and simple accident.

"In considering such evidence, please keep in mind that the Commonwealth must prove beyond a reasonable doubt that what occurred was not an accident. If the Commonwealth has failed to prove to you beyond a reasonable doubt that [what] occurred was not an accident, then you must find the defendant not guilty.

"An 'accident' is defined as an unexpected happening that occurs without intention or design on the defendant's part. It means a sudden, unexpected event that takes place without the defendant's intending it."

[8]The defendant makes a similar argument regarding his exchange with Evelyn because, under any view of the evidence, he was responding to a contact Evelyn initiated. The argument is wholly unpersuasive. Even his own version of his response, see *supra* at 737, stripped that response of any protection it might

brief, civil, conversation-ending response[9] to an unsolicited contact initiated by the beneficiary of a protective order, particularly when the beneficiary is a child, would not violate the order itself. Orders of this type, after all, are issued to protect people from abuse or its likelihood, not to strip away humanity by enjoining routine civilities responsive to unsolicited greetings. Indeed, in *Commonwealth* v. *Leger*, 52 Mass. App. Ct. 232, 235-237 (2001), we built on *Commonwealth* v. *Silva*, 431 Mass. 194 (2000), to hold that a contact *initiated* by a defendant subject to a c. 209A order would not violate the order if the contact was neither threatening nor uncivil and was incidental to the defendant's exercise of his right to speak to his children.[10]

In this case, however, we need not decide the point. The defendant's request for and receipt of an instruction on accidental[11] contact cannot fairly be viewed as a request that the

otherwise have enjoyed. See *Commonwealth* v. *Silva*, 431 Mass. 194, 199 (2000).

[9]There is a difference between a response that civilly terminates or stifles further discussion and one that invites the discussion's enlargement. See note 5, *supra.*

[10]Contrary to the defendant's suggestion, neither *Silva* nor *Leger* require the Commonwealth to prove that the defendant acted with intent to violate the order. Although the Commonwealth is required to prove that the defendant acted intentionally, it is not required to prove that the defendant acted with intent to violate the order. See *Commonwealth* v. *Delaney*, 425 Mass. 587, 595-597 (1997), cert. denied, 522 U.S. 1058 (1998); *Commonwealth* v. *Collier*, 427 Mass. 385, 388-389 (1998). The discussion in *Silva* and the holding in *Leger* looked at the nature of the contact itself, not at the intent with which the defendant acted. Both cases objectively considered the nature of the contact between the defendant and the protected party, and the setting in which the contact occurred, to determine whether the contact was of a type the order prohibited.

[11]In an effort to take advantage of the holding in *Leger* and the dictum in *Silva*, the defendant uses the term accidental and incidental as if they were interchangeable and characterizes his contact with John as "incidental." The terms are not synonymous and sound analysis requires distinguishing between them. The contacts at issue in *Silva* and *Leger* were "incidental" in the sense that they were preliminaries necessary for exercise of the defendant's right to contact his children. *Commonwealth* v. *Silva*, 431 Mass. at 195-196, 198. *Commonwealth* v. *Leger*, 52 Mass. App. Ct. at 234, 238. Here, the contact at issue was an end in itself and not incidental to the exercise of some other right. See generally *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. at 493-494 (jury could have found that the contact in question "was either incidental

judge instruct on the very different subject of an intentional, conversation-ending response to an unsolicited greeting. "Inherent in the right to present written requests for instructions and to rulings thereon, see Mass.R.Crim.P. 24(b), 378 Mass. 895-896 (1979), is the duty to bring the requests clearly to the judge's attention." *Commonwealth* v. *Thompson*, 23 Mass. App. Ct. 114, 116 (1986). See *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979) ("It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any").

Moreover, any error in the judge's failure to give an instruction regarding a brief, civil, conversation-ending response to any unsolicited greeting by John did not produce a substantial risk of a miscarriage of justice. See generally *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). Although the defendant testified that his "fat stuff" comment was directed at his father, he made the comment in the presence of John and Evelyn. A witness standing farther away from the defendant than both John and Evelyn testified that she heard the defendant's remark[12] and there is no hint or suggestion in the evidence that the comment was inaudible to John.

Under those circumstances, the defendant's comment amounted to a prohibited "contact" with John and Evelyn even accepting the defendant's testimony that he directed the comment toward his father. As we stated in *Commonwealth* v. *Basile*, 47 Mass. App. Ct. 918, 919-920 (1999), a case in which we held that evidence to the effect that the defendant had jumped up and down and waved at the complaining witness from a block away was sufficient to support the jury's conclusion that he had "contacted" her:

> "Our cases generally interpret 'contact' broadly; there are many ways to achieve a communication. See *Com-*

---

to a permitted activity . . . or an accidental, mistaken, or unknowing violation . . . as opposed to a contact that is neither incidental nor accidental").

[12] The witness's testimony about the content of that remark differed, however, both from the defendant's testimony and, although slightly, from Evelyn's.

*monwealth* v. *Butler*, 40 Mass. App. Ct. 906, 907 (1996) (sending flowers anonymously considered a contact); *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 307, 309-310 (1999) (asking friend to call victim and request that she accept defendant's collect calls); *Commonwealth* v. *Crimmins*, 46 Mass. App. Ct. 489, 490 (1999) (following victim's car). Compare *Commonwealth* v. *Tate*, 34 Mass. App. Ct. [446,] 449-450 [(1993)] (looking at victim from down the street violated 'no contact' condition of probation)."

If the defendant had directed to John, as he stood next to Evelyn, a profanity-laden description of Evelyn as "fat stuff," no one could seriously doubt that the comment would be a prohibited contact with both. Our broadly protective interpretation of "contacts," an interpretation fully consistent with the statutory purpose, means that one cannot undermine a no contact order by the simple expedient of ricocheting prohibited comments off of third parties, such as the defendant's father, who are in the vicinity of those whom the order protects. As a consequence, the defendant's admitted comment violated both the order protecting Evelyn and the order protecting John. Any instruction describing the protected nature of the defendant's response to John's greeting would have had to distinguish between that response and the defendant's "fat stuff" comment. It is extremely unlikely that a jury so instructed would have reached a different result. See *Commonwealth* v. *Rivera*, 51 Mass. App. Ct. 99, 105 (2001).

The defendant's last claim is that the judge should have excised from the copies of the orders introduced in evidence a portion that read "you are ordered not to contact the plaintiff . . . even if the plaintiff seems to allow or request contact." The quoted language, the defendant urges, was likely to be confusing to the jury and was inconsistent with what he claims are the purposes of G. L. c. 209A, i.e., to protect individuals from unsolicited contacts by the defendant, not to protect them from the consequences of contacts they initiate.

The purpose of the statute, however, is not simply to prevent the consequences of discrete acts. The statute is designed instead

to prevent abuse, however the abuse might occur. See generally *Commonwealth* v. *Fortier*, 56 Mass. App. Ct. 116, 120 (2002). The Legislature has rationally concluded that prohibiting contact, whether or not the contact is itself abusive, sometimes may be necessary to reduce the likelihood that abuse will occur. See G. L. c. 209A, §§ 3(*b*), 7, as amended by St. 1990, c. 403, §§ 3, 8. See generally *Commonwealth* v. *Mendonca*, 50 Mass. App. Ct. 684, 686-687 (2001). The language of the order in this case was clear, that language was highly relevant to the charge against the defendant, the statute permitted the prohibition the language embodied. As a consequence, the judge committed no error in refusing to exclude that language from the jury's consideration.

*Judgments affirmed.*