## COMMONWEALTH *vs.* JOHN R. KENDRICK.

No. 03-P-336.

Worcester. February 9, 2004. - March 11, 2005.

Present: CYPHER, KANTROWITZ, & BERRY, JJ.

Further appellate review granted, 444 Mass. 1103 (2005).

*Practice, Criminal,* Probation, Revocation of probation.

This court concluded that a defendant who, by acts of deliberate design and in conflict with a probationary no contact restriction, intentionally positioned and interposed himself in very close proximity to the protected individual or class designated in the probationary restriction, could not assert, as an absolute affirmative defense to a probation violation, that he did not speak to, otherwise communicate with, touch, or have physical interaction with any member of the protected class. [146-149]

COMPLAINT received and sworn to in the Clinton Division of the District Court Department on March 22, 1999.

A probation revocation hearing was held by *Martha A. Scannell Brennan,* J.

*James B. Krasnoo* for the defendant.

*Christopher P. Hodgens,* Assistant District Attorney, for the Commonwealth.

BERRY, J. In this case and the case of *Commonwealth* v. *Wilcox, ante* 131 (2005), also decided this day, we address a theory of defense advanced in connection with probation revocation hearings involving violations of a no contact probationary condition for a to-be-protected person or class of persons, here, children under the age of sixteen. The theory advanced by the defense in both cases is that — notwithstanding that a defendant, by acts of deliberate design and in a manner and in conflict with a probationary restriction, intentionally positions and interposes himself in very close proximity to the protected individual or class designated in the probationary condition — there is an absolute affirmative defense to a probation violation,

so long as the defendant does not speak to, otherwise communicate with, touch, or have physical interaction with any member of the protected class.

In the instant case, the defendant placed himself in the venue of a car show held at a local candy store parking lot and remained in close proximity to children present there, and in *Wilcox*, the defendant closely followed three young girls, first in his car and later into a store. Although neither defendant spoke to or touched the children in the protected probationary class, we conclude that the conduct undertaken by the defendant violated the no contact restriction in the probation orders. We reject the limited construction of a no contact probationary restriction upon which the defense theory advanced in both of these cases is predicated. We hold that a violation of a probationary no contact condition may be proved by acts, such as undertaken in these cases, in which the objective evidence establishes to a reasonable degree of certainty that the probationer, by deliberate design, acted intentionally and inconsistently with the probationary restriction, positioning and interposing himself in a place wherein the probationer knew or reasonably should have known that a protected person would be present; and the probationer, having intentionally gone to such a place, remains in that critical space, looming in close proximity to persons within the protected class, thereby posing the very risk the probationary restriction was designed to insulate against.[1]

1. *Procedural background.* In January, 2000, the defendant

---

[1]The requirements that the probationer act intentionally, and that there be evidence of deliberate design, avoids penalizing probationers for accidental, mistaken, or nonpurposeful violations of a no contact probationary order. These requirements avoid the imposition of any per se rule, such as might work as an absolute prohibition on a probationer attending a public event, or going to a public place (e.g., a Boston Red Sox baseball game, a music concert, or a supermarket), where members of the protected class might be reasonably expected to be present. See *Commonwealth* v. *Finase*, 435 Mass. 310, 315 (2001), quoting from *Commonwealth* v. *Collier*, 427 Mass. 385, 388 (1998) (in accord with the long-standing common-law principle, courts assume "that the Legislature did not intend 'to make accidents and mistakes crimes' "). However, we note that, while attendance at such public events and places may not constitute a per se violation of the probationary restriction, there may be discrete cases where the evidence is such that the governing standards set forth herein are met, i.e., the probationer goes to that public

pleaded guilty in the District Court to two counts of indecent assault and battery on a child, G. L. c. 265, § 13B, and on each count was sentenced concurrently to a term of two and one-half years in a house of correction, with seventeen months to serve and the balance suspended, followed by a probationary period of five years.[2] The sentencing judge imposed a special condition of probation that the defendant shall have "[n]o contact w/children under 16 yrs of age." Thereafter, the defendant signed conditions of probation, acknowledging the special condition that he was to "[h]ave no direct or indirect contact with . . . minors under sixteen."

In August, 2002, the defendant was notified of an alleged violation of the no contact probationary condition. Following a revocation hearing, a District Court judge found that the defendant had violated the restriction, revoked probation, and ordered the defendant imprisoned for the thirteen-month balance of the committed term.

*2. The evidentiary basis for the revocation.* The evidence presented at the revocation hearing by the probation officer and a police officer involved in the event leading to the revocation may be summarized as follows. The defendant was known to the Bolton police department as having convictions for sex offenses against youths — part of this knowledge was imparted by virtue of his registration as a sex offender as required under G. L. c. 6, §§ 178C-178P.

One late afternoon, Officer DiNiro saw the defendant towing his antique gold colored automobile to a car show held weekly in the town. The defendant's dog was with him in the lead car. (As shall be seen, both the antique car and the dog are described in the record as being part and parcel of the defendant's modus

---

event or place intentionally to be near the protected class and acts with a deliberate design and by manner and means in conflict with the probationary restriction.

[2]The District Court sentences were to be served concurrently with a separate sentence of two and one-half years in a house of correction with seventeen months to serve, balance suspended, imposed by a Superior Court judge in connection with another sex offense conviction involving a different child. The Superior Court sentence also included a probationary period of five years, which had as a special condition that the defendant have no contact with children under the age of sixteen.

operandi in luring youths close to him.) The car show was staged in the parking lot of a local candy store, a popular place, "very accessible to children," located within walking distance to a nearby residential area.

The defendant was at the car show during dusk from approximately 7:40 P.M. to near 8:40 P.M. Officer DiNiro kept watch, and in addition, to capture the scene, DiNiro arranged for another police officer to come and videotape the event. DiNiro saw several children wandering about the car show, some accompanied by adults, others alone. The children present included a number under sixteen years of age. The children came within "very close proximity" to the defendant.

Probation Officer Bernard O'Donnell provided background concerning the defendant's criminal history and the no contact probationary condition. In connection with the defendant's previous sexual offenses, the probation officer described a modus operandi wherein the defendant utilized his antique car and dog as enticements to attract youthful victims.

We have viewed the videotape admitted as an exhibit at the revocation hearing. While the videotape depicts a number of children walking about, in the approximately eighteen minute segment (as noted, the defendant was present on the scene for approximately one hour), the defendant does not appear to talk to, or have physical contact with, any child — a circumstance that the defense cites as exculpatory. The defense also presented two witnesses. As an example of the defendant's compliance with the probationary term, one Dr. Richard Bartlett testified that, on one occasion, he was out with his three young grandchildren and approached within forty feet of the defendant, who was in his driveway. The defendant told Bartlett that he was not supposed to be around children. Bartlett was aware the defendant was on probation for sex offenses against children. The second defense witness, Bruce Smith, who had a booth at the car show located near where the defendant parked his antique car, did not recall seeing children in the vicinity of the defendant's car.

Reduced to essentials, the heart of the defense was that because neither Officer DiNiro's testimony nor the videotape showed the defendant actually communicating with or touching

a child under sixteen, it was not proved that the no contact probationary restriction with respect to the aforesaid class of protected youths had been breached. Thus, the defendant asserts, there was not a violation of the probationary condition. We turn now to this theory of defense, which we determine is legally incorrect.

3. *Violation of the no contact probationary restriction.* The question on review of a probation revocation decision is "whether the record discloses sufficient reliable evidence to warrant the findings by the judge." *Commonwealth* v. *Morse,* 50 Mass. App. Ct. 582, 594 (2000). See *Commonwealth* v. *Hill,* 52 Mass. App. Ct. 147, 154 (2001). We conclude that the record in this case establishes that the defendant violated the probationary term of no contact with children under sixteen years of age and that revocation of probation was warranted. Accordingly, we affirm.

We reject the proposition that a no contact probationary condition may yield a violation only where there is an actual touching or a direct or indirect communication between the probationer and a person or class of persons encompassed within the protective designation in the probationary restriction. Settled case law concerning the range of conduct and expansive reach of a no contact order, as developed both in the context of probation violations and criminal prosecutions under of G. L. c. 209A, § 7, interprets the term "contact" much more broadly.[3] "[A] 'no contact' order is broader in scope than a 'stay away' order." *Commonwealth* v. *MacDonald,* 50 Mass. App. Ct. 220, 222 n.7 (2000). "The meaning of the sweeping negative 'no contact,' . . . seems plain without need for any refined lexical exploration." *Commonwealth* v. *Butler,* 40 Mass. App. Ct. 906, 907 (1996). See *Commonwealth* v. *Consoli,* 58 Mass. App. Ct. 734, 740-741 (2003).

The theory of defense — that, notwithstanding the existence

---

[3]In informing the operative restrictions of a no contact probationary condition, our courts have looked to, and consulted, the case law concerning violations of no contact orders issued under G. L. c. 209A and subject to criminal prosecution under § 7 of that statute. See, e.g., *Commonwealth* v. *MacDonald,* 50 Mass. App. Ct. 220, 222 n.7 (2000), considering the definitions in *Commonwealth* v. *Butler,* 40 Mass. App. Ct. 906, 907 (1996), a case involving a no contact order under G. L. c. 209A.

of the no contact probationary restriction, the defendant could position himself near and, in effect, haunt a place in close proximity to children — would compress and reduce the breadth and scope of a no contact probationary restriction, so as to morph that no contact restriction into a more limited restriction based on distance measurements alone. Such distance-based protective zones are most commonly incorporated in, and associated with, a stay away order or stay away probationary condition. A no contact order is different and encompasses more than merely a distance-based protective zone. Accordingly, the defendant's contention that, because he did not touch or communicate with the children milling about the car show, there was no violation, is incorrect.

Contrary to the defendant's contention, given the differing nature of the two distinct orders, no contact versus stay away, the Supreme Judicial Court, in *Commonwealth* v. *Finase*, 435 Mass. 310, 314 (2001), rejected a construction that would merge the broader proscriptions of a no contact order with the specified distance-based protections measured in a stay away order.

> "[T]he two terms are not interchangeable, but a 'no contact' order includes a 'stay away' order. Pursuant to a 'stay away' order, the defendant may not come within a specified distance of the protected party, usually stated in the order, but written or oral contact between the parties is not prohibited. By contrast, a 'no contact' order mandates that the defendant not communicate by any means with the protected party, in addition to remaining physically separated. Thus, a 'no contact' order is broader."

*Ibid.*

The broad reach of a no contact order prohibits a host of activities, regardless of whether a probationer or defendant encroaches on distance-circumscribed space, such as may be set in a stay away order, and regardless of whether the defendant does not actually touch, speak, or directly communicate with the designated class or person specified in the order.[4] A no

---

[4]As noted in *Commonwealth* v. *Basile*, 47 Mass. App. Ct. 918, 919-920 (1999), "there are many ways to achieve a communication. See *Commonwealth* v. *Butler*, 40 Mass. App. Ct. [at] 907 [ ] (sending flowers anonymously considered a contact); *Commonwealth* v. *Russell*, 46 Mass. App.

contact order directed at a probationer may be violated even if the probationer "remain[s] physically apart" from the designated individual. *Commonwealth* v. *MacDonald*, 50 Mass. App. Ct. at 222 n.7. Thus, it is not, as the defendant would urge, an absolute affirmative defense to a violation of a no contact probationary term that the defendant did not step within range and actually touch or communicate with the children under sixteen who were milling about the car show.

To the contrary, a violation of a probationary no contact order may be proved by acts, such as undertaken in this case, in which a probationer, by deliberate design and in conflict with the probationary restriction, intentionally places himself in a position where the probationer knew or reasonably should have known that a protected person would be present in a particular place, but nonetheless proceeds intentionally to position himself in that critical space in close proximity to that protected class.

In determining whether a defendant intentionally placed himself in a venue where he was likely to be in close proximity with protected persons, we "objectively consider[] the nature of the contact between the defendant and the protected party, and the setting in which the contact occurred, to determine whether the contact was of a type the order prohibited." *Commonwealth* v. *Consoli*, 58 Mass. App. Ct. at 739 n.10. The Commonwealth must establish objective facts that the probationer intended to, and by acts which manifest a deliberate design (here, the defendant's modus operandi established such a design), did put himself in a place and position in which he knew, or reasonably should have known, that members of the protective class defined in the probationary restriction would be present and in close proximity. "[T]he Commonwealth is required to prove that the defendant acted intentionally, it is not required to prove that the defendant acted with intent to violate the order." *Ibid.* "[A] defendant cannot be convicted of violating a 'no contact' order issued under c. 209A [or by analogy as a probationary term] where the contact occurs in circumstances where the defendant

Ct. 307, 309-310 (1999) (asking friend to call victim and request that she accept defendant's collect calls); *Commonwealth* v. *Crimmins*, 46 Mass. App. Ct. 489, 490 (1999) (following victim's car). Compare *Commonwealth* v. *Tate*, 34 Mass. App. Ct. [446,] 449-450 [(1993)] (looking at victim from down the street violated 'no contact' condition of probation)."

did not know, and could not reasonably have been expected to know, that the protected person would be present." *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 493 (2002). However, "[t]he Commonwealth is not required to prove that the defendant actually intended to violate the order, but only to prove that the act constituting the violation was voluntary." *Commonwealth* v. *Silva*, 431 Mass. 194, 200 (2000). See *Commonwealth* v. *Delaney*, 425 Mass. 587, 596-597, cert. denied, 522 U.S. 1058 (1997); *Commonwealth* v. *Collier*, 427 Mass. 385, 388-389 (1998).

Here the evidence supporting revocation established that the defendant intentionally positioned himself (with his dog and antique car, manifesting, according to the record, a deliberate design similar to that utilized by the defendant in the past to attract children) at a car show held in the parking lot of a candy store, a place where it was objectively reasonable to believe — and the defendant knew or should have known — that children under the age of sixteen would likely be in attendance and would be in close proximity to him. As in *Commonwealth* v. *Tate*, 34 Mass. App. Ct. 446, 450 (1993), "[w]e think also that the judge, in the circumstances, could find that the encounter [at the car show] had been contrived by the defendant" to place himself near the protected class. That the random movement of the children may have served as a gap, buffering the children walking about the car show from the defendant, did not insulate the defendant's conduct from constituting a violation of the probation restriction. The defendant's presence was at the center of "the prohibited circle." *Commonwealth* v. *Mendonca*, 50 Mass. App. Ct. 684, 687 (2001), quoting from *Commonwealth* v. *Butler*, 40 Mass. App. Ct. at 907. Furthermore, as noted, the modus operandi of displaying his antique car and dog to entice children — a pattern and course of conduct exhibited in the defendant's underlying sexual offenses — also supported the probation revocation. Finally, it was not unreasonable to expect that, when the defendant became aware that children under the age of sixteen were present at the car show, he could have and should have left.[5]

4. *Conclusion.* For these reasons, we answer in the affirma-

---

[5]The defendant's arguments that the no contact order was ambiguous and unconstitutionally vague are meritless. "[I]f the language which is challenged

tive the question whether the record discloses evidence sufficient to a reasonable degree of certainty to warrant the judge's finding that the defendant had violated the no contact condition of his probation. *Commonwealth* v. *Maggio*, 414 Mass. 193, 198 (1993). See *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226 (1995). "[T]he probationer has abused the opportunity given him to avoid incarceration." *Rubera* v. *Commonwealth*, 371 Mass. 177, 181 (1976), quoting from *Roberson* v. *Connecticut*, 501 F.2d 305, 308 (2d Cir. 1974).

> *Order revoking probation and*
> *imposing sentence affirmed.*

---

conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices, it is constitutionally adequate." *Commonwealth* v. *Power*, 420 Mass. 410, 421 (1995), cert. denied, 516 U.S. 1042 (1996), quoting from *Commonwealth* v. *Adams*, 389 Mass. 265, 270 (1983).